IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   15-cv-01389-WYD-CBS

JEANNE STROUP and
RUBEN LEE,

    Plaintiffs,

v.

UNITED AIRLINES, INC.,

    Defendant.

**ORDER**

I.    <u>INTRODUCTION AND BACKGROUND</u>

This matter is before the Court on Defendant's "Motion to Dismiss Complaint and this Action" pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 14), filed September 22, 2015. Plaintiffs filed a response in opposition to the motion, and Defendant filed its reply, making the motion ripe for a decision. The motion is denied as set forth below.

This case arises out of the Plaintiffs' alleged discriminatory termination from their employment with the Defendant based on their ages in violation of 28 U.S.C. §§ 621, *et seq.* ("ADEA"). By way of background, Plaintiffs Lee and Stroup were employed by United Airlines as flight attendants. Mrs. Stroup worked for United Airlines ("United") for approximately 35 years and flew approximately 30,000 flight hours without incident. Mrs. Stroup was born on September 6, 1958.

Mr. Lee worked for United for approximately 40 years and received multiple awards and prestigious assignments because of his "stellar customer service,

enthusiasm, loyalty, and attention to safety issues." (Compl. ¶ 24). Mr. Lee was born on January 24, 1952.

On September 20, 2013, Plaintiffs Lee and Stroup were observed to have allegedly violated United flight attendant guidelines during flight 721 from Denver, Colorado to San Francisco, California. The violations included failing to wear aprons and watching an ipad for approximately 15 minutes. Plaintiffs allege that these "purported rule violations [were used] as a pretextual basis to fire them when, in reality, United terminated them because of their ages." (Compl. ¶ 40).

On October 7, 2013, Plaintiffs "each received a Letter of Charge from United, accusing them of various disciplinary infractions, all of which were very minor, and some of which they did not commit." (Compl. ¶ 44). "The Letter of Charge level of discipline is the most serious discipline United issues to its employees, short of unpaid leave or termination, and is one of four levels of discipline described in Plaintiffs' Collective Bargaining Agreement ("CBA") with United." (Compl. ¶ 45).

Plaintiffs allege that United's "sham" investigation of the alleged rule violations "violated its CBA with Plaintiffs, and compromised Plaintiffs' ability to mount an effective defense against their disciplinary charges." (Compl. ¶ 46). While Plaintiffs admitted to not wearing their aprons during food and beverage service and watching an ipad for approximately 15 minutes, they believed that these "trivial" offenses did not warrant their terminations. Plaintiffs further alleged that they were unaware that there was a rule against watching an ipad since FAA regulations allowed this type of conduct. Interestingly, Plaintiffs allege that "United now expressly permits its flight attendants to

use personal electronic devices while onboard the aircraft with passengers present for business purposes, and United will soon begin <u>providing</u> its flight attendants with iPhones." (Compl. ¶ 53) (emphasis in original). During United's investigation, Plaintiffs defended themselves against the alleged rule violations, which included a November 5, 2013 disciplinary conference before United management officials including Association of Flight Attendants - CWA representative Ken Kyle.

Plaintiffs allege that on November 15, 2013, Ken Kyle called them and issued "ultimatums that United would send letters of termination out to each of them on November 19, 2013, if they did not retire by Monday, November 18, 2013." (Compl. ¶ 57). Ken Kyle explained to Plaintiffs that "they could fight their terminations," which would mean that they "could potentially keep their jobs with United if they prevailed," but "it could take a year or more for their appeal hearings to occur, and that they would be treated as terminated employees by United while their appeals were pending, meaning that they would lose their retiree medical benefits along with their retiree pass privileges." (Compl. ¶ 59). Additionally, Ken Kyle told the Plaintiffs that "if they lost their appeals, they would no longer be eligible for retiree medical benefits and retiree pass privileges." (Compl. ¶ 59).

Plaintiffs did not believe that fighting their terminations was a feasible option. They were concerned that "having a termination on their employment records would significantly increase their difficulty in finding other jobs - a difficulty further compounded by [Plaintiffs'] ages ...." (Compl. ¶ 60). Additionally, Plaintiffs were concerned about losing "considerable retiree medical and travel benefits ... if United fired them." (Compl.

¶ 60).

Alternatively, Ken Kyle also advised Plaintiffs "that they could submit notices of their retirements to United in lieu of being terminated." (Compl. ¶ 61). This would assure Plaintiffs that "they would not lose their retiree medical benefits if they retire, and that they might also still be eligible for retiree pass privileges." (Compl. ¶ 61). Finally, Plaintiffs alleged that Ken Kyle told them to "not wait until the last minute to notify United because of the complexity of the internal United system for processing retirement notifications, and the associated risk that their retirements would not become official before United's November 20, 2013 deadline for mailing their written notices of termination." (Compl. ¶ 61).

Plaintiffs allege that on November 18, 2013, they submitted their notifications of retirement to United "under [] intense duress." (Compl. ¶ 66). On June 29, 2015, Plaintiffs filed this action alleging that they were terminated due to unlawful age discrimination. Plaintiffs allege that "Defendant constructively discharged both Plaintiffs because a reasonable person in each Plaintiff's position would have felt compelled to resign. All other options that Plaintiffs understood to be available to them would have left them markedly worse off than retiring." (Compl. ¶ 110).

II. STANDARD OF REVIEW

A party may move to dismiss a complaint under Rule 12(b)(6) where the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d

-4-

1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When analyzing a 12(b)(6) motion, "all well-pleaded factual allegations ... are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State School for Deaf and Blind*, 173 F. 3d 1226, 1236 (10th Cir. 1999).  "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle it to relief." *Id.*

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and

therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

III. <u>DISCUSSION</u>

In this case, Plaintiffs allege a single claim for relief for a violation of the ADEA based on their constructive discharge as flight attendants. To prove a prima facie case of age discrimination, a plaintiff must show that: (1) he or she is a member of the class protected by the [ADEA]; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position at issue; and (4) he or she was treated less favorably than others not in the protected class. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998).

A constructive discharge in a Title VII context occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign. Essentially, a plaintiff must show that he had no other choice but to quit." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (*quoting Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998) (internal citations and quotations omitted)). This standard is objective: "the employer's subjective intent and the employee's subjective views on the situation are irrelevant." *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009).

Moreover, a finding of constructive discharge must be justified by the existence of certain "aggravating factors" that make staying on the job intolerable. *Cockerell v. Boise Cascade Corp.*, 781 F.2d 173, 177 (10th Cir. 1986); *James v. Sears, Roebuck*

*and Co., Inc.*, 21 F.3d 989, 992 (10th Cir. 1994); *see EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007). A plaintiff's burden in establishing constructive discharge is thus substantial. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 980 (10th Cir. 2008). Thus, the issue in constructive discharge cases is whether the employee had any other reasonable choice but to resign in light of the employer's actions. *Tran v. Trustees of State Colleges of Colorado*, 355 F.3d 1263, 1270 (10th Cir .2004). Here, I must evaluate the voluntariness of an employee's resignation using "an objective, totality of the circumstances standard." *Fischer*, 525 F.3d at 980.

In the motion to dismiss, Defendant argues that Plaintiffs' ADEA claim should be dismissed because "Plaintiffs do not plausibly allege the elements of their claim." (ECF No. 14 at 3). Defendant maintains that Plaintiffs have not alleged facts: (1) of an adverse employment action; (2) that they were qualified for their employment positions; or (3) that they were treated worse than others not in the protected class.

Viewing Plaintiffs' complaint in the light most favorable to them, I find that it contains sufficient factual allegations to state a claim for relief that is plausible on its face. First, Plaintiffs' complaint presents enough factual allegations to reasonably infer that Defendant constructively discharged Plaintiffs. It does not merely state that they were constructively discharged and recite the legal definition. The complaint gives dates and descriptions of Plaintiffs' protected conduct. Plaintiffs also allege specific factual accounts of dates, events, and specific conduct on the part of the Defendant that would, if proven, violate Plaintiffs' Title VII protections and would satisfy the illegality element of constructive discharge. Additionally, the complaint provides sufficient details

of the circumstances surrounding and leading up to Plaintiffs' resignations that plausibly show that their resignations were objectively involuntary.  For example, the complaint provides that Plaintiffs, who were United employees with approximately 35-40 years of highly effective service, were given the option of appealing their terminations and risk losing valuable retiree medical benefits and pass privileges or retire.  It also presents specific factual descriptions of plausible aggravating circumstances that could make staying on the job intolerable to a reasonable person, including waiting a year or more for their appeal hearings to occur, and that they would be treated as terminated employees by United while their appeals were pending.

Second, I find the complaint clearly alleges sufficient facts that the Plaintiffs were qualified for their jobs.  There are specific facts that detail the decades of excellent service the Plaintiffs performed for United for which they were repeatedly recognized. Finally, the complaint provides specific facts that younger flight attendants were not disciplined for the same violations that provided United's basis for terminating or constructively discharging Plaintiffs' employment.

IV.     CONCLUSION

Based on the foregoing, Defendant's "Motion to Dismiss Complaint and this Action" pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 14) is **DENIED**.

Dated: April 11, 2016

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge