# Report on Reasonable Rates for Attorney Fees

In Re: Jeanne Stroup and Ruben Lee, v. United Airlines, Inc.,

United States District Court,

District of Colorado

Case No. 15-cv-01389-WYD-STV

August 1, 2018

**Prepared for:**

David Lane
Killmer, Lane & Newman LLP.
1543 Champa Street - Suite 400
Denver, CO 80202
303-571-1000

**Bardwell Consulting Ltd**
4801 W. Yale Ave.
Denver, CO 80219
Voice: 303-934-3851
www.bardwellconsulting.com

**EXHIBIT 4**

## TABLE OF CONTENTS

**Table of Contents** ....................................................................................................2

**Introduction and Summary of Findings** .................................................................4

    Context of the Analysis ...........................................................................................4

        Table 1.   Plaintiffs' Attorneys Fees........................................................... 5

    Summary of Findings ..............................................................................................6

**Requested Rates are Reasonable** ..........................................................................6

    Customary Rate Charged by Plaintiffs' Attorneys.........................................7

        Table 2.   Customary Rate Charged by Plaintiffs' Attorneys....................... 8

    Experience, Reputation, and Ability of Attorney ........................................9

        Table 3.   Rates Charged by Top Employment and Civil Rights Attorneys ............... 11

    Billing Hours Reflect Reasonable Judgement................................................12

    The Preclusion of Other Work.............................................................................13

    Delay In Payment of Fees......................................................................................13

        Table 4.   Future Value of Contingent and Non-Contingent Fees.............................. 14

    Uncertainty in Collecting Fees ...........................................................................14

    Attorney Fees Awarded in Similar Cases.........................................................16

        Table 5.   Attorney Fees Awarded in Similar Cases .................................. 17

**Colorado Bar Rate Survey is Biased and Applied Incorrectly**.........................18

    Survey Had a very high Level of Non-Response resulting in potential Bias18

        Table 6.   Calculation of Potential Non-Response Bias ............................. 19

    Survey Lacks Statistical Rigor ............................................................................20

    Outline of Survey Deficiencies...........................................................................21

**Data Sources and Documents Used**......................................................................22

    Data and Documents..............................................................................................22

    Books and Articles and Other External Resouces........................................22

**Consultants Background and Compensation**.......................................................24

    Robert A. Bardwell..................................................................................................24

    Lance Kaufman.........................................................................................................24

**Attachment A: Robert A. Bardwell Curriculum Vitae**.......................................25

**Attachment B: Lance Kaufman Curriculum Vitae**.............................................29

**Attachment C: KLN Awards and Recognitions ....................................................35**

## INTRODUCTION AND SUMMARY OF FINDINGS

This report presents an analysis of reasonable attorney fees for Plaintiff attorneys in Jeanne Stroup and Ruben Lee v. United Airlines, Inc. Plaintiffs' attorneys are top rated attorneys that have received numerous awards and accolades. I have conducted a census of top rated attorneys and find that the rates charged in this case are consistent with the rates of other top attorneys in the Denver market. This report also presents my analysis of the Colorado Bar Association's 2017 Economic Survey. I find the CBA survey under-represents the market rates for attorneys of similar skill and experience as Plaintiffs' Attorneys.

### CONTEXT OF THE ANALYSIS

A jury in the United States District Court for the district of Colorado determined that Jeanne Stroup and Ruben Lee (Plaintiffs) were discharged from their jobs as flight attendants for United Airlines Inc. ("United" or "Defendant") on November 18, 2013, because of their ages. The trial jury issued a verdict in favor of Plaintiffs and found that United violated the Age Discrimination in Employment Act ("ADEA").

### *Defendants Caused Plaintiffs to Incur Substantial Legal Fees*

Killmer, Lane & Newman, LLP ("Plaintiffs' Attorneys" or "KLN") invested extensive effort over an almost five-year period in securing a favorable verdict for Plaintiffs. Plaintiff first consulted with Plaintiffs' Attorneys on December 14, 2013. Plaintiffs' Attorneys filed charges with the Equal Employment Opportunity Commission on behalf of both Mr. Lee and Ms. Stroup, alleging that United had violated the ADEA, on June 12, 2014. They received a Notice of Right to Sue from the EEOC on April 6, 2015 and filed suit against United on June 29, 2015. The case went to trial on February 26, 2018 and concluded with a jury verdict in Plaintiffs' favor on March 5, 2018, four and a half years after United had fired them. Throughout the nearly four years of litigation, United caused Plaintiffs to incur substantial legal expenses by:

1. Filing a Motion to Dismiss, which was denied;
2. Filing a Motion to Stay Discovery, which was denied in part and required Plaintiffs to fight to get information regarding their case from United;
3. Causing multiple discovery disputes which had to be taken before the magistrate for at least seven discovery hearings;
4. Requiring Plaintiffs to file a formal Motion to Compel Discovery, which required a hearing;
5. Requiring Plaintiffs to file a Motion to Quash a Subpoena *Duces Tecum* to protect their privacy because United subpoenaed all of Plaintiffs' cell phone records from 2013 and 2014, including all text messages, emails, and voice mail messages sent or received, as

well as a call log and all other document(s) associated with Plaintiffs' cell phone numbers;

6.   Filing a Motion for Summary Judgment, which required extensive briefing and was denied; and

7.   Filing two Motions *in Limine* before trial seeking to exclude evidence, which also required extensive briefing and were denied in part.

## Plaintiffs Request Defendants Pay Plaintiffs' Attorney Fees

After the jury verdict on March 5, 2018, Plaintiffs filed a Post-Trial Motion on Damages and a Fee Petition requesting that the Court order United to pay Plaintiffs' attorney fees pursuant to federal fee-shifting laws. Defendant responded to Plaintiffs' briefs, and Defendant's Response to the Fee Petition challenged the reasonableness of Plaintiffs' Attorneys rates, citing two surveys issued by the Colorado Bar Association ("Bar Surveys").[1] Plaintiffs hired Bardwell Consulting to evaluate the reasonableness of their Attorneys' fees and the applicability of the Bar Surveys.

Table 1 summarizes the fee requested by Plaintiffs' Attorneys.

### Table 1.     Plaintiffs' Attorneys Fees

| Employee | Hourly Rate | Hours Billed | Total Fee |
|---|---|---|---|
| David A. Lane, Partner | $650 | 279.6 | $181,740 |
| Darold W. Killmer, Partner | $650 | 10.9 | $7,085 |
| Mari Newman, Partner | $600 | 8.8 | $5,280 |
| Michael Fairhurst, Associate | $425 | 441.6 | $187,680 |
| Liana Orshan, Associate | $375 | 135.4 | $50,775 |
| Andy McNulty, Associate | $375 | 1.8 | $675 |
| Paralegals | $175 | 174.6 | $30,555 |
| Legal Assistants | $120 | 21.8 | $2,616 |
| **TOTAL** | **n/a** | **1074.5** | **$466,406** |

## Plaintiffs' Attorneys Among the Most Skilled and Highly Regarded

Plaintiffs' Attorneys have extensive experience, are recognized by peers as top attorneys, and have a long track record of successful cases. All three partners have been named "Lawyer of the Year" in employment or civil rights law. All three partners have been selected as Colorado Super

---

[1] COLORADO BAR ASSOCIATION, 2017 *Economic Analysis* (2017) (Exhibit D); COLORADO BAR ASSOCIATION, 2012 *Economic Survey Snapshot* (2012) (Exhibit E).

Lawyers, placing them among the top five percent of attorneys in Colorado.[2] Plaintiffs' Attorneys are named in the Colorado Trial Lawyers Association Case of the Year for 2003, 2009, and 2010, and named as finalists for Case of the Year in 2007, 2008, 2010, 2014, and 2017.  Attachment C of this report includes a sample of Plaintiffs' Attorneys' recognitions and achievements.

### SUMMARY OF FINDINGS

This report presents an analysis of the Plaintiffs' Attorneys fees.  I present the results of a census survey of top employment and civil rights attorneys in the Colorado market. As a census, the survey included every attorney in this group, and the response rate was 100 percent, so the results represent true market averages and ranges for surveyed group.  The rates requested by Plaintiffs' Attorneys are within a reasonable range for Colorado attorneys of similar skill, experience, and specialization.  The requested rates do not account for the risk and time delay associated with cost recovery in this case.  The hours billed in this case reflect reasonable billing judgement and are consistent with similar cases.

The CBA 2017 Economic Survey and 2012 Economic Survey are subject to numerous flaws and are not appropriate baselines for evaluating rates in this case.  These surveys have extremely low response rates, no measures of uncertainty, large potential for bias, and no applicable comparison groups for the Plaintiffs' Attorneys.

## REQUESTED RATES ARE REASONABLE

In this section I present evidence that the fees requested by Plaintiffs' Attorneys are reasonable. The following factors have been used to establish reasonable compensation for attorneys:

1. The customary rate charged by each Plaintiff Attorney;[3]
2. The experience, reputation, and ability of each Attorney;[4]
3. The rate charged by other professionals in the local market of similar ability and specialization;[5]

---

[2] *For discussion, see*: SUPER LAWYERS, https://www.superlawyers.com/about/selection_process.html (last visited July 31, 2018).

[3] Chip Bowles, Jr., AMERICAN BAR ASSOCIATION, *What is Reasonable under Lodestar?* GPSOLO LAW TRENDS AND NEWS BUSINESS LAW, Vol. 1 No. 2 (February, 2005).
https://www.americanbar.org/newsletter/publications/law_trends_news_practice_area_e_newsletter_home/lodestar.html (last visited July 19, 2018) [hereinafter, Chip Bowles, Jr., *What is Reasonable under Lodestar?*].

[4] Johnson v. Georgia Highway Express Inc., 488 F.2d 714

[5] Chip Bowles, Jr., *What is Reasonable under Lodestar?*

---

4. Evidence that billing hours reflect reasonable judgement;[6]
5. The preclusion of other work;[7]
6. Delay in payment of fees;[8]
7. Uncertainty in collecting fees; and
8. Awards in similar cases.[9]

The economic concept underpinning all nine factors is opportunity cost.  Opportunity cost is a method of measuring the total cost of actions and is calculated by identifying the value that could have been achieved by Plaintiffs' Attorneys if they had not worked on this case.  The time spent on this case prevented Plaintiffs' attorneys from serving other paying clients. In this report I use the factors identified above to establish an equitable rate of compensation for a case similar to the present case, taking into account the opportunity cost of undertaking the present case. Items one through three, above, establish lost revenue associated with time spent on this case. Items four and five establish the amount of lost time that could reasonably have been billed to a paying client. Items six and seven address the differences between upfront fee-based compensation and contingent compensation. Item eight provides an overall check of reasonableness in comparison to similar cases.

## CUSTOMARY RATE CHARGED BY PLAINTIFFS' ATTORNEYS

The customary rate charged by the Plaintiffs' attorneys provides the most relevant information on the opportunity cost of this case. This is because:

1. An attorney's customary rate directly measures the value of services.
2. The customary rate is an established market rate.
3. The customary rate embodies the skills, qualifications, and reputation of an attorney that cannot be captured by generic measures such as years of experience.
4. An attorney's customary rate establishes the baseline opportunity cost of providing service.

The table below provides the customary rate charged by Plaintiffs' Attorneys:

---

[6] Chip Bowles, Jr., *What is Reasonable under Lodestar?*

[7] Johnson v. Georgia Highway Express Inc., 488 F.2d 714.

[8] Brooks Magratten, Robert D. Phillips Jr., Thomas Connolly, Renee Feldman, and Isaac Mamaysky, AMERICAN BAR ASSOCIATION, *Calculating Attorney Fee Awards* GPSOLO TRIAL PRACTICE (March 2010). *See,* https://www.americanbar.org/newsletter/publications/gp_solo_magazine_home/gp_solo_magazine_index/magratten _phillips_connolly_feldman_mamaysky.html (last viewed July 19, 2018).

[9] *Georgia Highway Express Inc.,* 488 F.2d 714.

**Table 2.    Customary Rate Charged by Plaintiffs' Attorneys**

| Employee | Hourly Rate |
|---|---|
| David A. Lane, Partner | $650 |
| Darold W. Killmer, Partner | $650 |
| Mari Newman, Partner | $600 |
| Michael Fairhurst, Associate | $425 |
| Liana Orshan, Associate | $375 |
| Andy McNulty, Associate | $375 |
| Paralegals | $175 |
| Legal Assistants | $120 |

## The Customary Rate Directly Measures the Value of Services

The customary rate charged by attorneys directly measures the value of services provided. Under the "revealed preference theory" economists consider market rates to provide the most direct measure of consumer preference. Outside observers cannot know the value that individuals place on different goods and services. However, the revealed preference theory allows observers to establish minimum values for services. When consumers transact for services at a known price they reveal that they value the purchased service at least as much as other services of the same price. The rates provided in Table 2 are rates that are billed by KLN to clients paying hourly rates on a non-contingent basis.[10] The fact that clients pay David Lane's customary rate of $650 reveals that his customers value his services at this rate, even over those of other attorneys that may charge a lower rate.

## The Customary Rate is an Established Market Rate

The customary rate is an established market rate. The market rate, or market price, is the price of a commodity when sold in a given market. In this case the relevant market is plaintiff attorney services in Colorado. The customary rate is a known rate that is available to all consumers and can be compared to the rate of other service providers in this market. The fact that David Lane has and continues to sell his services at his customary rate demonstrates that it is a market rate. While Mr. Lane's rate is higher than the average rate charged in this market, that does not disqualify it as a market rate.

Professional service markets are a type of competitive market that function under "Monopolistic Competition". Monopolistic competition occurs when there are many providers of a particular

---

[10] *See*, Declaration of Darold Killmer.

commodity, but each provider has unique characteristics. The auto market is an example of monopolistic competition. The Porsche 911 and Ford Mustang are both sports cars. However, these cars have different characteristics that appeal to different customers. While the Porsche 911 is three times the price of a Mustang it still has a market price, and that market price is a competitive price.

### The Customary Rate Embodies an Attorney's Skills, Qualifications and Reputation

The customary rate embodies an attorney's skills, qualifications, and reputation. As noted above the services provided by attorneys have different characteristics, including skills, qualifications, and reputation. David Lane has almost 40 years of experience as a plaintiffs' attorney in employment and civil rights law. This experience includes successful litigation of high profile cases defended by skilled and highly compensated attorneys. He has received numerous awards, accolades, and recognitions as one of the best attorneys in Colorado.

The outcomes of lawsuits are uncertain. When a client engages an attorney to try a lawsuit the client does not know with certainty that the suit will be successful. Attorney skill is a critical factor in the success of a lawsuit, and an attorney's experience, track record, recognitions and reputation provide a signal to potential customers about the attorney's skill. Clients seek to maximize their chances for a successful lawsuit by hiring skilled attorneys. For these reasons attorneys with the best track records and reputations are in most demand by clients. This is what allows top attorneys to charge higher than average rates. If an average attorney charged a high rate the attorney would not be successful in attracting clients. David Lane's customary rate is higher than average, and this demonstrates that clients agree that he is one of the top attorneys in Colorado.

### The Customary Rate Establishes a Baseline Opportunity Cost

The customary rate establishes a baseline opportunity cost. Mr. Lane's customary rate represents the value that he puts on his own time, even when that time is spent in leisure or any other non-paying activity. This is a well-established concept in labor economics. Professional service providers have limited time. Every hour spent working on a case is one less hour available to Mr. Lane. The cost of Mr. Lane spending time on this case is the lost opportunity of spending that time on other activities, and the value of that time is his customary rate.

#### EXPERIENCE, REPUTATION, AND ABILITY OF ATTORNEY

The experience, reputation, and ability of an attorney provide a valid basis for judging the reasonableness of an attorney's compensation rate.[11] I understand that Killmer, Lane, and

---

[11] *Georgia Highway Express Inc.*, 488 F.2d 714.

Newman has extensive experience and is highly reputable in the fields of employment and civil rights law. All three partners have received four prestigious recognitions: as Lawyer of the Year, as attorneys involved in Case of the Year in multiple years, as a Top Lawyer and as Superlawyer through a peer review processes awarded to the top five percent of attorneys in Colorado. The reputation, experience, and ability of Plaintiffs' Attorneys indicate that it is appropriate to compare their rates to the rates of other top attorneys, rather than attorneys with average reputation and ability.

## *Rate Charged by Other Professionals of Similar Ability and Specialization*

The rate charged by other professionals of similar ability and specialization is a less direct measure of value of an attorney's services, however it informs the reasonableness of an attorney's rates. I have surveyed the Colorado market to establish the rate charged by professionals of similar ability and specialization as David Lane.

I survey all Colorado top lawyers identified by Best Lawyers from 2014 to 2018 with practice areas of Employment Law-Individuals and Civil Rights Law, all Colorado Superlawyers who work mainly for plaintiffs in employment law, and 5280 Denver Top Lawyers in Civil Rights Litigation. David Lane, Darold Killmer, and Mari Newman have all been recognized as "Lawyer of the Year" by Best Lawyers, and all three are recognized as Superlawyers and 5280 Denver Top Lawyers. All three of these publication uses a peer review methodology.  Lawyer of the Year is only awarded to a single attorney each year in each region and practice area. Superlawyers uses a peer and editorial review process that identifies the top five percent of lawyers. A peer review methodology is a more appropriate measure of ability than years of experience. This is because even an attorney of average skill can practice for an extended period of time. below provides the name, rate, and accolades of every lawyer I surveyed.

**Table 3.      Rates Charged by Top Employment and Civil Rights Attorneys**

| Name | Rate | Best Lawyer 2014-2018 | 5280 Top Lawyer 2018 | Superlawyer 2018 |
|------|------|-----------------------|----------------------|------------------|
| **Darold Killmer** | **$650** | **YES** | **YES** | **YES** |
| **David Lane** | **$650** | **YES** | **YES** | **YES** |
| **Mari Newman** | **$600** | **YES** | **YES** | **YES** |
| John Holland | $650 | YES | | |
| Martha M. Tierney | $360 | YES | | |
| John Culver | $550 | YES | | |
| Paula Greisen | $525 | YES | | YES |
| Ellen M. Kelman | $350 | YES | | YES |
| Charlotte Sweeney | $500 | | YES | YES |
| Timothy Fox | $525 | | YES | |
| Adam Frank | $400 | | YES | |
| Erica Grossman | $500 | | YES | |
| David H. Miller | $525 | | | YES |
| Anna Holland Edwards | $500 | | YES | |
| Todd J. McNamara | $500 | | | YES |
| Arash Jahanian | $400 | YES | | |
| M. Jeanette Fedele | $300 | | | YES |
| Diane King | $525 | YES | | |
| Qusair Mohamedbhai | $500 | YES | | |
| Sara Neel | $450 | | YES | |
| Siddartha Rahod | $475 | YES | | |
| Amy Robertson | $530 | | YES | |
| Barry Roseman | $488 | | | YES |
| Faisal Salahuddin | $400 | | YES | |
| Mark Silverstein | $550 | | YES | |
| Rebecca Wallace | $425 | | YES | |

My survey achieved a 100 percent response rate from 26 attorneys.  The average rate charged by all attorneys is $493 per hour. David Lane, Darold Killmer, and Mary Newman are the only lawyers that have been designated as Lawyer of the Year, Superlawyer, and Denver Top Lawyer in the relevant practice areas. This indicates that Plaintiffs' Attorneys are most appropriately compared with other attorneys receiving multiple accolades.  Six attorneys in my survey received four or more accolades. These six attorneys have an average rate of $577 per hour.

The standard deviation of rates for all lawyers in the survey is $91. Statisticians and the courts use two standard deviations from the mean rate as the common range of values.  The two standard deviation upper limit for of rates of top rated attorneys is $675.  David Lane's rate of $650 is below this upper limit, and therefore is within the common range of rates consistent with the rates of other top attorneys. The fact that all Plaintiffs' Attorneys are the only attorneys in the

survey recognized by all three publications supports charging rates that are in the upper range of the market rate distribution.

## *Survey is Applicable to Associates*

Killmer Lane and Newman associates have also received awards and recognitions which justify position as associates of top rated attorneys.[12] The rates in this survey can be applied to Killmer Lane and Newman associates. Law firms leverage the knowledge and skills of their most experienced attorneys through a hierarchical structure. More experienced attorneys mentor and supervise less experienced employees. This mentorship structure increases the productivity of the less experienced attorneys. When an associate works with a more experienced and productive partner the associate is more productive.[13] The market rate for associates of top firms have higher rates than associates at firms that do not have highly skilled mentors. For example, the rates for associates of elite law firms can exceed $675 per hour.[14]

The Colorado Bar Association Economic Survey finds that associates rates are on average 73 percent of partner rates. Applying this ratio to the average rate for top attorneys above supports a rate of $492 for associates of KLN.[15]

### BILLING HOURS REFLECT REASONABLE JUDGEMENT

The majority of my analysis focuses on the reasonableness of rates. However, I have confirmed that Plaintiffs' Attorneys have adjusted billing hours to reflect the level of hours that would reasonably be charged to a non-contingent client paying customary rates. The description for billed hours indicates that work was appropriately allocated between partners, associates, and support staff.  Associate billing primarily consists of research and drafting documents. Partner billings primarily consist of client meetings, reviewing documents, strategy, and trial work. Support staff billings primarily consist of interviewing and drafting witness statements, document management, schedule management, and filings.

---

[12] *For example*, Michael Fairhurst is recognized by Superlawyers as a "Super Lawyer Rising Star." *See,* https://profiles.superlawyers.com/colorado/denver/lawyer/michael-fairhurst/d1f6e2fc-cb36-4922-8f94-ceb40479c1fc.html.

[13] Michael A. Hitt, Leonard Bierman, Katsuhiko Shimizu, and Rahul Kochhar, *Direct and Moderating Effects of Human Capital on Strategy and Performance in Professional Service Firms: A Resource-Based Perspective.* ACADEMY OF MANAGEMENT JOURNAL, 44:1, 13-28 (2001).

[14] Fifth year associates at elite law firms have rates of $675, exceeding the rate requested by the partners of KLN. See *Read This Before You Set Your 2018 Billing Rates*, THE AMERICAN LAWYER, (2017).

[15] Calculated as the upper limit of the market rate range of $675 multiplied by 73 percent.

## THE PRECLUSION OF OTHER WORK

This case precluded other work because it utilized a large portion of the firm's labor hours and financial resources. Plaintiffs' Attorneys spent over 1074.5 hours working on this case.[16] This is a substantial investment of time and resources which precluded Plaintiffs' Attorneys from accepting other paying cases during the same time period. Plaintiffs' Attorneys undertook the financial risk associated with this case, and paid employees for the work performed.  This reduced the cash and financial resources available to the firm to undertake other contingency work.  If Plaintiffs' Attorneys had worked on other paying cases for a similar amount of time, they would have earned a similar amount of fees as those requested in this case.

## DELAY IN PAYMENT OF FEES

Plaintiffs' Attorneys have been working on this case since December 14, 2013 without receiving compensation. Mr. Lane's firm has paid the salaries and covered overhead for the employees working on this case for nearly five years. This means that Mr. Lane's firm has been financing the cost of this litigation. The attorney fees awarded in this case should recognize the time value of money associated with the delayed payment of fees. The time value of money is a well-established economic concept that money received by someone yesterday is worth more than the same amount received today.

One approach to establishing the time value of money is to consider the opportunity cost of having money. If $100 had been invested in the Dow Jones Industrial Average index fund in January 1, 2014, the date that Mr. Lane could reasonably have expected to receive payment for the initial consultation in this case, it would be worth $164 today. This equates to an interest rate of 12 percent per year. Another approach to establishing the time value of money is to consider the interest rate charged for late payments. Plaintiffs' Attorneys customarily charge 18 percent interest per year for late payment of invoices. I will use the more conservative value of 12 percent for the time value of money during this period.

Economists equate payments made over time using the concept of "present value" and "future value". Future value computes the value of payments that were due in the past for some point in the future in the future. Payments that were due in the past are equated to the future value by calculating interest that would have accrued on the original invoice. Table 4 lists the fees for hours incurred during the course of this litigation in the columns "Value When Incurred".[17] The columns "Future Value in August 2019" list the future August 1, 2019 value of Plaintiffs'

---

[16] Plaintiff Attorneys have not billed for all time spent on this case.

[17] Fees are computed on an annual basis during the litigation.

Attorneys' fees if they had been paid when incurred. This amount represents a reasonable compensation for incurred fees if Plaintiffs' Attorneys do not receive compensation until August 1, 2019 because it accounts for the time value of money. For example, for Mr. Lane I calculate billable hours between December 14, 2013 and June 7, 2018 to be 279.6 hours. At a rate of $650 per hour the total fee is $181,740.  If this amount had been paid when the work was performed, the value in August 1, 2019, after accounting for interest, is $248,628 which equates to a rate of $889. The impact of delayed payment of Mr. Lane's fees results in a 40 percent increase in fees owed due to the time value of money.[18]

**Table 4.        Future Value of Contingent and Non-Contingent Fees**

| Staff | Total Hours | Value if Paid When Incurred | | Future Value in August 2019 | |
|---|---|---|---|---|---|
| | | Total Fees | Rate | Total Fees | Rate |
| Lane | 279.6 | $181,740 | $650 | $248,628 | $889 |
| Killmer | 10.9 | $7,085 | $650 | $9,490 | $871 |
| Newman | 8.8 | $5,280 | $600 | $6,718 | $763 |
| Fairhurst | 441.6 | $187,680 | $425 | $280,532 | $635 |
| Orshan | 135.4 | $50,775 | $375 | $60,909 | $450 |
| McNulty | 1.8 | $675 | $375 | $811 | $451 |
| Jamie | 174.6 | $30,555 | $175 | $40,325 | $231 |
| Zewdu | 21.8 | $2,616 | $120 | $3,869 | $177 |
| **Total** | **1074.5** | **$466,406** | **$434** | **$651,282** | **$606** |
| **Late Payment Increased Value** | | | | **+$184,876** | **+$172** |
| **Percentage Increase in Value** | | | | **+40%** | **+40%** |

## UNCERTAINTY IN COLLECTING FEES

I understand that Mr. Lane undertook this case on a contingency basis. This means that Mr. Lane was not certain of recovering his expenses, including his opportunity costs, when he accepted the case. As a result, Mr. Lane was exposed to financial risk that was greater than normal engagements with existing clients paying his customary rate. Risk aversion is a well-established economic principle. This means that, in general, individuals and firms expect additional compensation for riskier activities. Civil litigation that proceeds to trial is extremely risky because less than half of all such cases prevail for plaintiffs.[19]

---

[18] The market interest rate of 12 percent may incorporate some risk premium, which is discussed in the following section.  However, this does not mean that these calculations incorporate the risk associated with this case.  The risk associated with contingent litigation, which has a plaintiff success rate of less than 50 percent, is much more risky than the risk associated with a long term investment in Dow Jones Industrial Average equities.

[19] 2017 Statistics for the U.S. District Court, District of Colorado.

It is appropriate to make an additional allowance for the risk associated with trying this case on a contingent basis. This is markets have established risk premiums that compensate investors and risk takers for the uncertainty associated with risky activities and investments.  The risk premium is the additional compensation that is needed to incentivize investors to undertake risky activities. Plaintiffs' Attorneys constitute investors in the sense that they have invested time, energy, and finances in trying this case.  Given the choice between a non-contingent client that pays $650 with certainty and a contingent client which has an expected value of $650, but may pay nothing, risk adverse individuals will choose the non-contingent client. The fact that Mr. Lane charges non-contingent clients $650 per hour indicates that Mr. Lane has not added a risk premium to the rate requested in this case.

The risk premium is the additional compensation that is required for individuals to undertake risky activities. The risk premium is illustrated in financial markets by comparing the rates of US government bonds, which have a near certainty of paying, with the rates of higher risk investments such as stocks and corporate bonds. The expected return from higher risk investments is higher than the expected return from US government bonds, and the difference in return is the risk premium.

In order to equate a contingent case fee with a non-continent case fee the expected value of the contingent case equal Mr. Lane's base rate plus a risk premium.[20] I have not been provided sufficient information to calculate an appropriate risk premium for this case. However, based on my general familiarity with evidence of risk aversion in business decisions, financial markets, and economics literature, a risk premium of 10 percent is reasonable lower bound for the type of risk exposure that Plaintiffs' Attorneys accepted by financing this case.[21]

My survey of top employment and civil rights lawyers revealed an average rate of $493. Adjusting for both time value of money (27 percent) and risk (10 percent) results in a reasonable contingent rate of $688 per hour.  These rates are above the requested rates for Plaintiffs' Attorneys.

---

[20] William T. Lynk, University of Chicago Law School, *The Courts and the Plaintiffs' bar: Awarding the Attorney's Fee in Class-Action Litigation,* 23 THE JOURNAL OF LEGAL STUDIES, 185, 185-209 (1994). This relationship is formalized as a condition of labor market equilibrium cited in Lynk. Lynk's formulation assumes risk neutrality and focuses on the relationship between expected value of contingent fees, delay in payment, and the value of non-contingent labor.

[21] Roelof Salomons and Henk Grootveld, *The Equity Risk Premium: Emerging vs. Developed Markets,* 4 EMERGING MARKETS REVIEW, 121, 121-144 (2003). Risk premium generally increases with both the level of uncertainty and the amount of investment at stake. For example, the equity risk premium for established markets averages 4 percent, while the equity risk premium for emerging markets averages 12 percent, and in some cases can exceed 18 percent Contingent civil litigation is both high risk and requires a large investment.

### ATTORNEY FEES AWARDED IN SIMILAR CASES

The previous section demonstrates that Plaintiffs' attorney fees are similar to the local market for top quality counsel. In this section I compare attorney fees in this case to similar cases, which may take place in other regions. Attorney fees awarded in similar cases provides a reasonableness test that incorporates the amount of time and effort required to try the case. Therefore, this comparison tests whether the hours billed in this case are reasonable. Plaintiffs' Attorneys have provided me with the following examples of similar cases:

- *Miller v. Raytheon Co.*, 716 F.3d 138 (5th Cir. 2013).

- *Moore v. University of Notre Dame¸* 22 F.Supp. 2d 896 (N.D. Ind. 1998).

- *Mock v. Bell Helicopter Textron, Inc.*, No. 6:04-cv-1415-Orl-28DAB, 2010 U.S. Dist. LEXIS 149369 (M. D. Fla. June 30, 2010).

- *Stratton v. Department for the Aging*, 91 Civ. 6623 (SAS), 1996 U.S. Dist. LEXIS 9551 (S.D.N.Y. June 24, 1996).

- *Watcher v. Pottsville Area Emergency Med. Serv.*, 559 F. Supp. 2d 516 (M.D. Pa. 2008).

Table 5 below summarizes the attorney fees awarded in these cases in both nominal dollars and in inflation-adjusted 2018 dollars.[22]

---

[22] I adjust for inflation using the Bureau of Labor Statistics Producer Price Index for Legal Services. A price index is a measure that equates purchasing power for a basket of goods, in this case legal services, in any given year to purchasing power for the same goods in a base year. Price indexes are commonly used to account for inflation, or general increases in price levels over time. I calculate inflation adjusted awards by converting the nominal value of attorney fees awarded in each case into 2018 dollars. I first divide the award by the producer price index in the year of the award. This adjusts the award to the base year of the price index. I then multiply the amount by the producer price index in 2018. This adjusts the award from the base year to 2018 dollars.

©2018 Bardwell Consulting, Ltd

### Table 5.    Attorney Fees Awarded in Similar Cases

| Case | Year | Nominal Dollars | 2018 Dollars |
|---|---|---|---|
| *Miller v. Raytheon Co.* | 2013 | $488,437 | $559,565 |
| • *Attorney Rate Approved* | 2013 | $578 | $662 |
| • *Attorney Rate Approved* | 2013 | $543 | $622 |
| • *Attorney Rate Approved* | 2013 | $280 | $321 |
| *Moore v. University of Notre Dame* | 1998 | $394,865 | $800,657 |
| *Mock v. Bell Helicopter Textron, Inc.* | 2010 | $332,229 | $416,022 |
| *Stratton v. Department for the Aging* | 1996 | $337,760 | $726,860 |
| *Watcher v. Pottsville Area Emergency Med. Serv.* | 2008 | $224,573 | $299,074 |

The average total award in 2018 dollars is $560,000. Plaintiffs' attorneys have requested fees of approximately $470,000. This request is 15 percent lower than the average fee award for similar cases, and well below the highest amount.

The fees awards in these cases demonstrate that the amount of time Plaintiffs' attorneys have billed is reasonable. Hours billed are calculated by dividing total dollars by average hourly rate. Even if rates awarded in these cases were 15 percent higher than Plaintiffs' Attorneys, the total number of hours billed in the representative cases would be equal to those billed in this case.

To summarize, the rates actually charged by Plaintiffs' Attorneys represent the most relevant measure for the opportunity cost of an hour of time. A census survey of rates in Colorado reveals that Plaintiffs' Attorneys charge market rates that are within the expected range of rates for similarly skilled attorneys practicing in the same local market. The fees requested in this case have not been adjusted to account for the financing cost associated with a potential five-year delay between incurred cost and received payment, and they have not been adjusted to account for uncertainty in receiving payment on a contingent basis. The hours billed for this case reflect reasonable billing judgement. The hours billed in this case are consistent with the hours billed in similar cases.

## COLORADO BAR RATE SURVEY IS BIASED AND APPLIED INCORRECTLY

The 2017 Economics of Law Practice Survey[23] and the 2012 Economic Survey Snapshot,[24] both conducted by the Colorado Bar are not reliable sources of rates for Attorneys practicing in Colorado because of multiple methodological flaws. This section discusses these flaws and demonstrates that the surveys cannot provide reliable rates for evaluation of the fee award in this case.

I have reviewed the information included in the Colorado Bar Association's 2017 Economic Survey with respect to the Defendant's claims about mean compensation for licensed, practicing attorneys in Colorado, across different variables, and whether the numbers cited by Defendant are reliable.  In studying the survey, there are two major areas of serious concern: non-response bias and lack of statistical rigor.

### SURVEY HAD A VERY HIGH LEVEL OF NON-RESPONSE RESULTING IN POTENTIAL BIAS

The survey almost certainly suffers from non-response bias. The survey itself acknowledges the potential for non-response bias and notes that this bias increases for high non-response rates.[25] Overall, the non-response rate is unusually high (approximately 94%) and even higher for specific key variables. I see no attempt at a follow-up to contact the non-respondents nor any attempt at remediating the non-response.[26] It is well documented that survey response rates decrease with income.[27] Attorneys that make more money might be inclined to not reveal their earnings for various reasons (e.g., too busy, apathy, sensitivity, etc.). If the survey responses under-represent high earning attorneys the average rate in the survey results will be biased low. As a result, the data in the survey likely significantly underrepresent the mean hourly rates for Colorado attorneys.

### *Low Survey Response Introduces Bias*

Statistical bias exists when an estimate is expected to differ from the true value. Low survey response introduces bias in top attorney rates because attorneys with lower rates are more likely to respond than attorneys with high rates. When this occurs the survey average will always be

---

[23] Exhibit D, *2017 Economics of Law Practice Survey*, COLORADO BAR ASSOCIATION.

[24] Exhibit E, *2012 Economic Survey Snapshot*, COLORADO BAR ASSOCIATION.

[25] Exhibit D, *2017 Economics of Law Practice Survey*, COLORADO BAR ASSOCIATION.

[26] On page 3 of the survey, I do see an attempt at showing equivalency of the percentages of survey respondents by county to those from the actual population of active Colorado attorneys, but this alone is not sufficient to claim the survey results are representative of active Colorado attorneys.

[27] Anton Korinek, Johan A. Mistiaen and Martin Ravallion, THE WORLD BANK, *Survey Nonresponse and the Distribution of Income* (2005). Demonstrates that survey response decreases monotonically with income.

lower than the true average. Table 6 below illustrates how a ninety-four percent non-response rate results in bias.

**Table 6.    Calculation of Potential Non-Response Bias**

| Rate | Number of Attorneys | Number of Respondents at 6% Response |
|---|---|---|
| $200 | 33 | 5 |
| $300 | 33 | 3 |
| $400 | 33 | 1 |
| $500 | 33 | 1 |
| $600 | 33 | 0 |
| **Mean** | **$400** | **$280** |
| **Non-Response Bias** | | **-$120** |

The example above is representative of the 2017 CBA survey, which had ten respondents for employee side labor and employment attorneys ("Employment Attorneys"). In this example the average rate for all Employment Attorneys is $400, but because of non-response by higher-earning attorneys, the survey finds an average of only $280, $120 lower than the true average.

### *Use of Survey Gift Exacerbates Risk of Bias*

The 2017 CBA Survey offered a $100 gift card as an incentive to complete the survey. Standard economic theory can demonstrate that this incentive will exacerbate the response bias. An attorney's rate represents the opportunity cost of the attorney's time. Using a fixed monetary incentive to complete the survey will not offset the time cost of completing the survey equally for all attorneys. For attorneys with low rates, $100 compensates for more time than for attorneys with high rates. This means that the incentive will increase response rate for attorneys with low rates more than it will for attorneys with high rates.

### *The 2017 CBA Survey Does Not Include Top Rated Attorneys*

I surveyed 25 top rated Employment Attorneys and found an average rate of $494 per hour. The 2017 CBA Survey found a 75th percentile rate of $356, which should represent the lower bound of the rate for the highest-paid 25 percent of attorneys. However, this rate, $356, is lower than all but two of the attorneys in my survey.  This means that the CBA survey includes at most five of the 25 attorneys in my survey. If the 2017 CBA Survey had included all the attorneys in my survey, the average rate for Employment Attorneys in the 2017 CBA Survey would have been approximately $432 per hour.[28] A second adjustment to account for non-response bias could

---

[28] This value is calculated by adding 20 top attorney rates at an average rate of $494 to the ten attorneys surveyed at an average rate of $309.

increase the true average rate by an additional $120 to $552, which is within the range of rates established by my census of Colorado's top Employment Attorneys.

### SURVEY LACKS STATISTICAL RIGOR

The data analysis that has been done lacks statistical rigor and consists mostly of basic summarization. I do not see any measures of statistical uncertainty, like standard errors or confidence intervals, for the estimates of the mean hourly rates. This is important because some of the sample sizes for the categories in question are so small. For example, the sample size for attorneys whose primary practice is employee-side labor and employment is extremely small (only 10 respondents). Therefore, a conclusion about the mean hourly rate for all active Colorado employee-side labor and employment attorneys taken from the survey will be quite imprecise, even if it were not biased.

## *Survey Does Not Account for Combined Impact of Attorney Characteristics*

There are sophisticated statistical techniques that can be used for survey analysis that could give us knowledge of the effect of the variables when they are viewed all together.  For example, it could be that there is a combined synergistic effect of primary practice area and years of experience practicing law on salary that would be missed looking at these two variables one at a time. According to the 2017 CBA Survey:

- The average rate for all attorneys is $254
- Employment Attorneys have a rate that is $309, or $55 higher than average
- The average rate for 30-39 years of experience is $292, or $38 higher than average
- The average rate for partners is $310, or $56 higher than average

If the combined impact of each of these categories were additive the average rate of partner Employment Attorneys with 30-39 years of experience would be $403. This is not a reliable estimate of average rates for this subset of attorneys, since, as stated below, the CBA Survey does not provide adequate information to compute that average. Instead, this example is provided to illustrate the additional bias introduced by applying an average for one category to a more selective subset of that category.

*Colorado Bar Rate Survey is Biased and Applied Incorrectly*

### *Survey Does Not Include Appropriate Comparison Group*

The 2017 CBA Survey does not have an attorney group that has comparable skills, expertise, and or recognition as Plaintiffs' Attorneys. The appropriate comparison group is Employment Attorneys with 40 years of experience, peer recognition as top attorneys, and a history of precedential cases in civil rights and employment law. None of the categories in the 2017 CBA Survey are applicable.

### *The 2012 CBA Survey Does Not Provide Reasonable Benchmark*

The Defendant claims that the hourly rates within the 2012 survey should serve as the benchmark by which billing rates should be assessed. However, the 2012 survey suffers from the same problems as the 2017 survey:

- Significant risk of non-response bias;
- No statistical rigor; and
- No relevant comparator categories.

In conclusion, the survey's estimated mean hourly rates rate for active Colorado attorneys are not reliable and the actual mean hourly rate for active Colorado attorneys of similar skill and experience as Plaintiffs' Attorneys is significantly higher.

### OUTLINE OF SURVEY DEFICIENCIES

The following outline of issues contradict applying the survey findings to the fee awards in this case.

1. Non-response bias:
   a. The survey has a low response rate, leading to a potentially large and unknown response bias.
   b. Survey response rates tend to monotonically decreases with income, creating a systematic bias to the non-response experienced in this survey.
   c. The use of a gift card to incentivize response may increase bias because this incentive would be less effective for individuals with higher incomes.
2. Survey does not report standard errors or confidence intervals.
3. Survey does not include a category that is applicable to Plaintiffs' Attorneys:
   a. Plaintiffs' attorneys have numerous awards and recognitions as best employment and civil rights lawyers in Colorado, and the survey does not report a category of comparable respondents.
   b. General rates are not comparable to appropriate fee awards for Attorneys who have received numerous accolades, and whose cases have been recognized as "case of the year".
4. Survey does not provide rates for Attorneys with multiple distinctions:
   a. Employment Attorneys have higher than average rates than other fields.

*Data Sources and Documents Used*

b. Attorneys with 30-39 years of experience have higher than average rates.
c. No analysis of combined impact of labor plus 40 years of experience.
5. Survey is based on insufficient sample size for private employment law (10 rate responses)[29] or private civil rights (0 rate responses):[30]
a. Sample size is not large enough for meaningful interpretation of mean or 75th percentile.

## DATA SOURCES AND DOCUMENTS USED

This report may be revised and a supplemental report submitted if additional information is provided. The following sources were used in preparation of this report:

### DATA AND DOCUMENTS

1. [168-2] Darold Killmer Timesheet.pdf
2. [168-2] David Lane Timesheet.pdf
3. [168-4] Mari Newman Timesheet.pdf
4. [168-5] Michael Fairhurst Timesheet.pdf
5. [168-6] Liana Orshan Timesheet.pdf
6. [168-7] Andrew McNulty Timesheet.pdf
7. [172-4] Exhibit D.pdf
8. [172-5] Exhibit E.pdf
9. Declaration of Darold Killmer - Final.pdf
10. Exhibit 1 - Affidavit of David Lane (Full Copy).pdf
11. Time - Jamie.xlsx
12. time -Zewdu.xlsx

### BOOKS AND ARTICLES AND OTHER EXTERNAL RESOUCES

1. Dow Jones Industrial Average Historical Prices, WALL STREET JOURNAL, https://quotes.wsj.com/index/DJIA/historical-prices (last viewed July 28, 2018).
2. BUREAU OF LABOR STATISTICS, *PPI Industry Group Data for Legal Services (not seasonally adjusted)*, at https://www.bls.gov/regions/mid-atlantic/data/producerpriceindexlegal_us_table.htm (last viewed July 28, 2018).
3. Michael A. Hitt, Leonard Bierman, Katsuhiko Shimizu, and Rahul Kochhar, *Direct and Moderating Effects of Human Capital on Strategy and Performance in Professional Service Firms: A Resource-Based Perspective.* ACADEMY OF MANAGEMENT JOURNAL, 44:1, 13-28 (2001).

---

[29] 2017 Survey Page TABLE 002 page 2.
[30] Id.

*Data Sources and Documents Used*

4.  William T. Lynk, University of Chicago Law School, *The Courts and the Plaintiffs' bar: Awarding the Attorney's Fee in Class-Action Litigation,* 23 THE JOURNAL OF LEGAL STUDIES, 185, 185-209 (1994).

5.  Alon Klement and Zvika Neeman, Oxford University, *Incentive Structures for Class Action Lawyers,* 20 JOURNAL OF LAW, ECONOMICS, & ORGANIZATION, 102, 102-124 (2004).

6.  Brooks Magratten, Robert D. Phillips Jr., Thomas Connolly, Renee Feldman, and Isaac Mamaysky, AMERICAN BAR ASSOCIATION, *Calculating Attorney Fee Awards* GPSOLO TRIAL PRACTICE (March 2010).
    https://www.americanbar.org/newsletter/publications/gp_solo_magazine_home/gp_solo_magazine_index/magratten_phillips_connolly_feldman_mamaysky.html (last viewed July 19, 2018).

7.  Chip Bowles, Jr., AMERICAN BAR ASSOCIATION, *What is Reasonable under Lodestar?* GPSOLO LAW TRENDS AND NEWS BUSINESS LAW, Vol. 1 No. 2 (February, 2005).
    https://www.americanbar.org/newsletter/publications/law_trends_news_practice_area_e_newsletter_home/lodestar.html (last visited July 19, 2018).

8.  Anton Korinek, Johan A. Mistiaen and Martin Ravallion, THE WORLD BANK, *Survey Nonresponse and the Distribution of Income* (2005).

9.  COLORADO BAR ASSOCIATION, *2017 Economic Survey* (2017).

10. COLORADO BAR ASSOCIATION, 2012 *Economic Survey Snapshot* (2012)

11. Roelof Salomons and Henk Grootveld, *The Equity Risk Premium: Emerging vs. Developed Markets,* 4 EMERGING MARKETS REVIEW, 121, 121-144 (2003).

## CONSULTANTS BACKGROUND AND COMPENSATION

### ROBERT A. BARDWELL

I have been retained as an expert witness in this case. I possess a Ph.D. in Mathematical Statistics and have been endorsed as an expert in the field of statistics. I have been retained by plaintiffs and defendants to perform statistical evaluations of employment practices and have testified as an expert in the area of statistics in United States District Court for the District of Colorado, United States District Court, Nevada, and the Circuit Court of the Sixth Judicial Circuit, Pinellas County, Florida. My curriculum vitae is attached. Cases in which I have testified as an expert at trial or by deposition within the preceding four years are indicated in my curriculum vitae. My publications in the previous ten years are listed in my curriculum vitae.

My hourly rates are $750 per hour for testimony and preparation, $500 for consultation and research.

I swear and affirm under penalty of perjury that all of the foregoing is true to the best of my knowledge.

Robert A. Bardwell, Ph.D.

### LANCE KAUFMAN

I have been retained as an expert witness in this case. I possess a PhD in Economics and have been recognized as an expert in the field of economics. I have over 15 years of experience performing economic research and modeling. I have provided expert witness testimony on forecasting, production cost modeling, and labor costs in contested proceedings involving firms with thousands of employees. I have served as lead negotiator for cases involving over one billion dollars in disputed expenses.

My hourly rates are $500 per hour for testimony and preparation, $350 for consultation and research.

I swear and affirm under penalty of perjury that all of the foregoing is true to the best of my knowledge.

Lance Kaufman, Ph. D.

*Attachment A: Robert A. Bardwell Curriculum Vitae*

## ATTACHMENT A: ROBERT A. BARDWELL CURRICULUM VITAE

**PERSONAL**

ROBERT A. BARDWELL
4801 W. Yale Ave.
Denver, Colorado 80219
(720) 219-3627

**EDUCATION**

| | | | |
|---|---|---|---|
| University of Colorado, Boulder | Ph.D. | Mathematics | 1985 – 1989 |
| University of Colorado, Denver | B.A. | Philosophy | 1981 – 1982 |
| University of Chicago | | | 1969 – 1971 |

**PROFESSIONAL EXPERIENCE**

| | |
|---|---|
| Statistical consulting | 1989 – present |
| University of Colorado instructor and teaching assistant | 1985 – 1989 |
| Research, consulting and statistical programming | 1976 – 1986 |

**PUBLICATIONS**

• Bardwell, Robert A., Paul Klite, and Jason Salzman. "Local TV News: Getting Away with Murder." *Harvard International Journal of Press/Politics*, 2(2): 102-112 (1997).

• Max, Wendy, Dorothy P. Rice, Eric Finkelstein, Robert A. Bardwell, Steven Leadbetter. "The Economic Toll of Intimate Partner Violence against Women in the United States." *Violence and Victims,* 19 (3) (June 2004).

• DiGuiseppi, Carolyn, Cynthia W. Goss, Lihong Dao, Amanda Allshouse, Robert A. Bardwell, Edward Hendrikson, Shelly L. Miller, Jill Litt. "Safety Practices in Relation to Home Ownership Among Urban Mexican Immigrant Families." Journal of Community Health, 37 (1): 165-175 (2012).

**RESEARCH, CONSULTING, AND STATISTICAL PROGRAMMING**

- Stein Mitchell Cipollone Beato & Missner LLP, Washington, DC, 2017 –
  **Retained** as an expert witness for plaintiffs re a proprietary probability model developed to identify and verify accounts responsible for repeated infringements of asserted copyrights by defendants' internet subscribers in re UMG Recordings Inc., et al., v. Grange Communications Networks LLC and Patriot Media Consulting, LLC., Case No. 1:17-cv-00365, United States District Court Western District of Texas, Austin Division.

- Lisa Sahli, Esq., Denver, Colorado, 2017 –
  **Deposed** as an expert witness for plaintiffs to evaluate the impact of gender and age on terminations in re Christine Frappied et al. v. Affinity Gaming Blackhawk, LLC, Civil Action No. 17-cv-01294-RM-NYW, United States District Court, District of Colorado.

- Lowery Parady, LLC, Denver, Colorado, 2017
  Retained by plaintiffs in class action to estimate damages from unpaid overtime and gap time in re Violeta Solis et al. v. The Circle Group, LLC, et al., Case No. 1:16-cv-01329-RBJ, United States District Court, District of Colorado.

- Killmer, Lane & Newman, LLP, Denver, Colorado 2017
  Retained by plaintiffs to analyze the impact of race on terminations in re Calvin Brown et al. v. City of Aurora et al., Case No. 15-cv-00767-RPM, United States District Court, District of Colorado.

- Financial Scholars Group, Orinda, California, 2017
  Provided analysis of risk profile in bundled real estate and personal loans in re Old Republic Insurance Company v. Countrywide Bank et al., Circuit Court of Cook County, Illinois, Chancery Division.

*Attachment A: Robert A. Bardwell Curriculum Vitae*

- Financial Scholars Group, Orinda, California, 2017
    Provided consultation and analysis of financial market transactions in preparation of settlement claims filings in re <u>Laydon v. Mizuho Bank, Ltd., et al. and Sonterra Capital Master Fund Ltd. et al v. UBS AG et al.</u>
- Clean Energy Action, Boulder, Colorado, 2016 – 2017
    Testified and consulted on the appropriate discounting methodology used in energy resource planning in the Public Service Company of Colorado application for approval of the 2016 Electric Resource Plan, Proceeding No. 16A-0396E, Public Utilities Commission of the State of Colorado.
- Confidential Client, Los Angeles, CA 2016
    Retained to provide analysis and report on the probability that distinct crimes are independent events based on geographical analysis of crime rates.
- Steptoe & Johnson LLP, Washington, DC 2016
    Retained as an expert witness for plaintiffs to analyze the impact of unpaid work time and estimate damages related to donning and doffing claims in re <u>Trecia Marie Moore et al. v. Verizon West Virginia, Inc., et al.</u>, Case No. 11-c-307-2, Circuit Court of Harrison County, West Virginia
- Christine Lamb and Kevin James Burns, Denver, Colorado, 2016
    Retained as an expert witness for defendant to analyze the impact of ethnicity on termination decisions in re <u>Aaron Aragon et al v. Home Depot USA, Inc.</u>, Case No. 1:15-cv- 00466-MCA-KK, United States District Court, District of New Mexico.
- Steptoe & Johnson LLP, Washington, DC, 2015 –
    **Deposed and testified** as an expert witness for plaintiffs re a proprietary probability model developed to identify and verify accounts responsible for repeated infringements of asserted copyrights by defendants' internet subscribers in re <u>BMG Rights Management (US) LLC, and Round Hill Music LP v. Cox Enterprises, Inc., et al.</u>, Case No. 1:14-cv- 1611(LOG/JFA), United States District Court Eastern District of Virginia, Alexandria Division.
- Hagens Berman Sobol Shapiro, LLP, Phoenix, Arizona, 2014 –
    **Deposed** as an expert witness for plaintiffs to calculate unpaid mileage for truck drivers in re <u>Swift Transportation Co., Inc.</u>, Civil Action No. CV2004-001777, Superior Court of the State of Arizona, County of Maricopa.
- Hagens Berman Sobol Shapiro, LLP, Phoenix, Arizona, 2014 –
    Retained as an expert witness for plaintiffs to analyze sample result to estimate the number of unique individuals in database of photographic images in re <u>Yahchaaroah Lightbourne, et al. v. Printroom, Inc., et al.</u>, Civil Action No. 8:13-cv-00876-JLS-RNB, United State District Court, District of Colorado.
- Karen Larson, Denver, Colorado, 2014 –
    **Deposed** as an expert witness for plaintiff to evaluate the impact of race on workforce distribution in re <u>Sangho Lee v. Avago Technologies U.A., Inc.</u>, Civil Action No. 1:13-cv-03450-RM-KMT, United State District Court, District of Colorado.
- Elizabeth Lamb Kearney, P.C., Denver, Colorado, 2014 –
    Retained as an expert witness for plaintiff to evaluate the impact of race and gender on workforce representation and terminations in re <u>Annette Canales, et al. v. AMPCO System Parking</u>, Civil Action No. 13-cv-02571-RM-MJW, United State District Court, District of Colorado.
- Padilla & Padilla, PLLC, Denver, Colorado, 2014 –
    Retained as an expert witness for plaintiffs to evaluate the impact on minority applicants from the use of the AccuPlacer Test by the City and County of Denver, and estimate

*Attachment A: Robert A. Bardwell Curriculum Vitae*

damages in re <u>Marian G. Kerner, et al. v. City and County of Denver</u>, Civil Action No. 11-cv-00256-MSK-KMT, United State District Court, District of Colorado.

- Padilla & Padilla, PLLC, Denver, Colorado, 2014 –
  Retained as an expert witness for plaintiffs to estimate lost earnings from wrongful death in re <u>Margarita Madrigal et al. v. Randall Carroll et al.</u>, Civil Action No. 12-cv-01918-PAB-MJW, United State District Court, District of Colorado.

- Hawks Quindel, S.C., Milwaukee, Wisconsin, 2013
  Retained as an expert witness for plaintiffs to develop damages model including calculation of unpaid drive time and other unpaid time in re <u>Steven Berndt, et al. v. Cleary Building Corp.</u>, Civil Action No. 3:11-cv-00791-wmc, United State District Court, District of Wisconsin.

- Maduff & Maduff, LLC, Chicago, Illinois, 2013 –
  Retained as an expert witness for plaintiffs to analyze the impact of unpaid work time related to donning and doffing, meal breaks, and rounding in re <u>James Blakes et al. v. Illinois Bell Telephone Company</u>, Case No. 11-cv-336, United States District Court, Northern District of Illinois, Eastern Division.

- Steptoe & Johnson PLLC, West Virginia, 2013 –
  Retained as an expert witness for plaintiffs to analyze the impact of unpaid work time and estimate damages related to donning and doffing claims in re <u>Charles Byard et al., v. Verizon West Virginia et al.</u>, Civil Action No. 1:11cv132, United States District Court, Northern District of West Virginia.

- Federal Election Commission, 2013 – 2014
  Retained to update the Auditors' Sampling Program Bardwell Consulting Ltd. developed for the Federal Election Commission to monitor contributions and expenditures for all Federal elections.

- U.S. Equal Employment Opportunity Commission, 2013 –
  Retained to provide statistical analysis of EEOC filings.

- Gonser Law Office, P.C., Denver, Colorado, 2012 – 2014
  Retained as an expert witness for plaintiff to analyze unpaid work time and estimate damages in re <u>Peter Miller v. Yotes, Inc. d/b/a The Mattress Firm</u>, Case No. 12 cv 4044, District Court, Denver County.

- Wakefield Holdings, 2012
  Developed algorithms to comparatively rank college and professional teams and athletes in competitive sports for StazHub website.

- Killmer, Lane & Newman LLP., Denver, Colorado, 2012 – 2013
  **Testified** for defendant regarding the impact of venue selection on the composition of potential venires, in re <u>State of Colorado v. Edward Montour, Jr.</u>, Case Number: 02CR782, District Court Douglas County, Colorado.

- McNamara Roseman & Kazmierski LLP, Denver, Colorado, 2012 – 2013
  Retained as an expert witness for the plaintiffs regarding analysis of rounding and adjustments in work time records in re <u>Abeyta et al. v. CF&I Steel, L.P. d/b/a Evraz Rocky Mountain Steel</u>, Civil Action No. 1:11-cv-00663-RBJ-CBS, United States District Court, Colorado.

- Cappello & Noël LLP, Santa Barbara, California, 2012
  **Deposed** as an expert witness for the plaintiffs regarding vehicle accident probabilities in re <u>Jose Arredondo et al. v. Santa Barbara Sheriff's Department</u>, Case No.: 1370977, California State Court.

*Attachment A: Robert A. Bardwell Curriculum Vitae*

- David Lichtenstein, Denver, Colorado, 2011
  - Retained as an expert witness for the plaintiffs regarding analysis of work time records in re <u>Anderson et al. v. Pure Energy Services (USA), Inc.</u>, Civil Action No. 11-CV-00676-MSK-BNB, United States District Court, Colorado.
- Nichols Kaster & Anderson, PLLP, Minneapolis, Minnesota, 2011
  - **Deposed** as expert witness for the plaintiffs in unpaid work time action in re <u>Jana Karl et al. v. Uptown Drink LLC et al.</u>, Court File No. 27-CV-10-1926, State of Minnesota District Court.
- King and Greisen, Denver, Colorado, 2011
  - Retained as an expert witness for the plaintiffs to analyze the impact of race and national origin on job assignments and compensation in re <u>Nasir Abagibe et al. v. Colorado Cab Co., DBA Yellow Cab Co.</u>, American Arbitration Association.
- Boulder Police Department, Boulder, Colorado, 2010 –
  - Retained to reevaluate, in the light of the 2005 National Research Council study of bullet lead identification evidence, the unprecedented technique developed earlier for the identification of shot-shell pellet evidence in Case No. P83-7907, homicide of Sidney Wells.
- BASF, 2009 - 2013
  - Contracted to develop residential energy analysis web site utilizing the OptiMiser computational engine developed by Bardwell Consulting Ltd.
- Federal Election Commission, 2009 -
  - Retained to developed enhanced version of the Auditors' Sampling Program Bardwell Consulting Ltd. developed for the Federal Election Commission to monitor contributions and expenditures for all Federal elections.
- Federal Election Commission, 2006 – 2007
  - Designed and developed sampling program used by the Federal Election Commission to monitor contributions and expenditures for all Federal elections. Program was developed as a web-based application that can also run on auditors' notebook computers. Program designs, draws and evaluates samples of transactions for audit. All results were tested against the American Institute of Certified Public Accountant statistical auditing programs.
- University of Colorado Health Sciences Center, Denver, Colorado, 2005
  - Member of research team for *A Study of Immigrant Housing Conditions in Commerce City*, *Colorado*, to assess housing-related health risks affecting recent immigrant families with children. Responsible for construction of housing inventory and GIS profile of the study area; construction of the sample frame; design the sample of participating households; supervision of survey analysis, compilation of survey estimates, and contribution to resulting publications.

## ATTACHMENT B: LANCE KAUFMAN CURRICULUM VITAE

**PERSONAL**

Lance Kaufman
Bardwell Consulting
2623 NW Bluebell Place
Corvallis, OR 97330
(541) 515-3380
lance@bardwellconsulting.com

**EDUCATION**

| | | |
|---|---|---|
| Oregon Dept. of Administrative Services | | |
| | Oregon Project Management Certification Program | Enrolled |
| Oregon Dept. of Administrative Services | | |
| | Management Education Series Foundational Training Program | 2017 |
| University of Oregon | Ph.D. in Economics | 2008-2013 |
| University of Oregon | M.S. in Economics | 2006-2008 |
| University of Anchorage Alaska | B.B.A in Economics | 2001-2004 |

**PROFESSIONAL EXPERIENCE**

| | | |
|---|---|---|
| Senior Economist | Oregon Public Utility Commission | 2015-Present |
| Senior Economist | Bardwell Consulting | 2014-Present |
| Public Utility Advocate | Alaska Department of Law | 2014-2015 |
| Senior Economist | Oregon Public Utility Commission | 2013-2014 |
| Instructor | University of Oregon | 2008-2012 |
| Research Assistant | University of Alaska Anchorage | 2003-2008 |

**TEACHING EXPERIENCE**

| | |
|---|---|
| Intermediate Microeconomics | |
| University of Oregon | Spring 2010 |
| Issues in Urban Economics | |
| University of Oregon | Fall 2010 |
| University of Oregon | Summer 2010 |
| Issues in Public Economics | |
| University of Oregon | Winter 2011 |
| University of Oregon | Summer 2011 |
| University of Oregon | Fall 2009 |
| University of Oregon | Summer 2009 |
| Principles of Economics-Discussion Sections | |
| University of Oregon | 2007 |
| University of Oregon | 2008 |

**PROFESSIONAL ASSOCIATIONS**

- Society of Depreciation Professionals. 2014-Present Roll: Member
- National Association of Regulatory Utility Commissioners: Staff Energy Subcommittee. 2013-Present Role:  Member
- University of Alaska Anchorage Economics Club. 2004-2006 Role: President

*Attachment B: Lance Kaufman Curriculum Vitae*

**RESEARCH EXPERIENCE**
- "Alternative Emission Control Compliance Modeling for PacifiCorp Integrated Resource Planning." Oregon Public Utility Commission. 2014. Role: Lead Modeler.
- "Salmon Harvests in Arctic Communities: Local Institutions, Risk, and Resilience." National Science Foundation, Human and Social Dynamics Program, Agents of Change Division, Award # 0729063; Sept. 2007-Feb. 2014. Amount: $743,677. Role: Research Assistant. Collaborators Lance Howe, James Murphy and Colin West (Principal Investigators).
- "Rent Dissipation in Competitive Limited Entry Fisheries: An Experimental Analysis." University of Alaska Anchorage Experimental Economics Laboratory 2005-2006 Role: Research Assistant. Collaborators: Gunnar Knapp and James Murphy (Principal Investigators).
- "Socio-Economic Impacts of the Exxon-Valdez Oil Spill on Kodiak Island Communities." Impact Assessment LLC 2005. Role: Research Assistant. Collaborators: William Nebesky and Lee Huskey Gunnar Knapp and James Murphy (Principal Investigators).

**DISSERTATION**
"Three Essays on Governance Structure in Hospital Industry." University of Oregon. Accepted March 2013.

**PRESENTATIONS AND CONFERENCES**
- Pause Fest 2015 "Economic Impact of Online Freelance Marketplaces." February 2015. Role: Presenter.
- "Technical Workshop on Portland General Electric Sales and Load Forecasting." January 2014. Oregon Public Utility Commission. Role: Workshop Leader
- "PacifiCorp Inter-Jurisdictional Cost Allocations" PacifiCorp 2013-2014 Role: Negotiation participant and sub-committee member.
- "RENEWABLE ENERGY ADVISORY COUNCIL" Energy Trust of Oregon May 2013. Role: Oregon Public Utility Commission Representative
- "Blueprint for Alaska" University of Alaska Anchorage 2005. Role: Conference Organizer.

**RESEARCH, CONSULTING, AND STATISTICAL PROGRAMMING IN LITIGATION**
- Killmer, Lane & Newman, LLP, Denver, Colorado 2018
    Retained by plaintiffs to analyze the reasonable attorney fees in re Calvin Brown et al. v. City of Aurora et al., Case No. 15-cv-00767-RPM, United States District Court, District of Colorado.
- Stein Mitchell Cipollone Beato & Missner LLP, Washington, DC, 2017 –
    Provided analysis of a proprietary probability model developed to identify and verify accounts responsible for repeated infringements of asserted copyrights by defendants' internet subscribers in re UMG Recordings Inc., et al., v. Grange Communications Networks LLC and Patriot Media Consulting, LLC., Case No. 1:17-cv-00365, United States District Court Western District of Texas, Austin Division.
- Financial Scholars Group, Orinda, California, 2017
    Provided analysis of risk profile in bundled real estate and personal loans in re Old Republic Insurance Company v. Countrywide Bank et al., Circuit Court of Cook County, Illinois, Chancery Division.
- Financial Scholars Group, Orinda, California, 2017

*Attachment B: Lance Kaufman Curriculum Vitae*

Provided consultation and analysis of financial market transactions in preparation of settlement claims filings in re <u>Laydon v. Mizuho Bank, Ltd., et al. and Sonterra Capital Master Fund Ltd. et al v. UBS AG et al.</u>

- Confidential Client, Los Angeles, CA 2016
  Retained to provide analysis and report on the probability that distinct crimes are independent events based on geographical analysis of crime rates.
- Jamie Gansmann, 2017
  Retained as expert for plaintiffs to estimate lost wages and damages due to wrongful termination.
- Robert Belluso, 2017
  Retained as expert for plaintiff to estimate on lost profit in <u>Robert Belluso D.O. v Trustees of Charleroi Community Park</u>, PHRC Case No. 201505365, Pennsylvania Human Relations Commission.
- Lowery Parady, LLC, Denver, Colorado, 2017
  Assisted in analysis for plaintiffs in class action to estimate damages from unpaid overtime and gap time in re <u>Violeta Solis et al. v. The Circle Group, LLC, et al.,</u> Case No. 1:16-cv-01329-RBJ, United States District Court, District of Colorado.
- Sawaya & Miller Law Firm, Denver, Colorado, 2017
  Provide data processing and analysis of employment records leading to settlement.
- King & Greisen, LLP, Denver, Colorado, 2016
  Provide analysis of age disparities in performance evaluations and reduction in force.
- Financial Scholars Group, Orinda, California, 2017
  Assisted in analysis of risk profile in bundled real estate and personal loans in re <u>Old Republic Insurance Company v. Countrywide Bank et al.,</u> Circuit Court of Cook County, Illinois, Chancery Division.
- Financial Scholars Group, Orinda, California, 2017
  Assisted in analysis of financial market transactions in preparation of settlement claims filings in re <u>Laydon v. Mizuho Bank, Ltd., et al.</u> and <u>Sonterra Capital Master Fund Ltd., et al v. UBS AG et al.</u>
- Clean Energy Action, Boulder, Colorado, 2016 – 2017
  Assisted in analysis of the appropriate discounting methodology used in energy resource planning in the Public Service Company of Colorado application for approval of the 2016 Electric Resource Plan, Proceeding No. 16A-0396E, Public Utilities Commission of the State of Colorado.
- Dr. Loan Le, California, 2016
  Provided report on the probability that distinct crimes are independent events based on geographical analysis of crime rates.
- Steptoe & Johnson LLP, Washington, DC 2016
  Assisted in analysis for plaintiffs to analyze the impact of unpaid work time and estimate damages related to donning and doffing claims in re <u>Trecia Marie Moore et al. v. Verizon West Virginia, Inc., et al.,</u> Case No. 11-c-307-2, Circuit Court of Harrison County, West Virginia.
- Christine Lamb and Kevin James Burns, Denver, Colorado, 2016
  Assisted in analysis for defendant on the impact of ethnicity on termination decisions in re <u>Aaron Aragon et al. v. Home Depot USA, Inc.,</u> Case No. 1:15-cv- 00466-MCA-KK, United States District Court, District of New Mexico.
- Steptoe & Johnson LLP, Washington, DC, 2015 – 2016
  Assisted in analysis and statistical design for plaintiffs of a proprietary probability model developed to identify and verify accounts responsible for repeated infringements of

*Attachment B: Lance Kaufman Curriculum Vitae*

asserted copyrights by defendants' internet subscribers in re BMG Rights Management (US) LLC, and Round Hill Music LP v. Cox Enterprises, Inc., et al., Case No. 1:14-cv-1611(LOG/JFA), United States District Court Eastern District of Virginia, Alexandria Division.

- Hagens Berman Sobol Shapiro, LLP, Phoenix, Arizona, 2014 –
   Deposed. Assisted in analysis for plaintiffs re calculation of unpaid mileage for truck drivers in re Swift Transportation Co., Inc., Civil Action No. CV2004-001777, Superior Court of the State of Arizona, County of Maricopa.
- Hagens Berman Sobol Shapiro, LLP, Phoenix, Arizona, 2014 – 2016
   Assisted in analysis for plaintiffs to analyze sample result to estimate the number of unique individuals in database of photographic images in re Yahchaaroah Lightbourne et al. v. Printroom, Inc., et al., Civil Action No. 8:13-cv-00876-JLS-RNB, United States District Court, District of Colorado.
- Padilla & Padilla, PLLC, Denver, Colorado, 2014 – 2016
   Assisted in analysis for plaintiffs re the impact on minority applicants from use of the AccuPlacer Test by the City and County of Denver, and estimated damages in re Marian G. Kerner et al. v. City and County of Denver, Civil Action No. 11-cv-00256-MSK-KMT, United States District Court, District of Colorado.
- U.S. Equal Employment Opportunity Commission, 2014 – 2016
   Provided statistical analysis of EEOC filings.

**REGULATORY HEARINGS**
- Portland General Electric 2019 General Rate Case Docket No. UE 335.
- New Load Direct Access Rulemaking Docket No. AR 614.
- Northwest Natural Gas 2018 General Rate Case Docket No. UG 344.
- Portland General Electric 2016 Annual Power Cost Variance Docket No. UE 329.
- PacifiCorp 2016 Power Cost Adjustment Mechanism Docket No. UE 327.
- Public Utility Commission of Oregon Staff Investigation into the Treatment of New Facility Direct Access Charges Docket No. UM 1837
- PacifiCorp Oregon Specific Cost Allocation Investigation Docket No. UM 1824.
- PacifiCorp 2018 Transition Adjustment Mechanism Docket No. UE 323.
- Portland General Electric 2018 General Rate Case Docket No. UE 319.
- Avista Corp. 2017 General Rate Case Docket No. UG 325.
- Portland General Electric Affiliated Interest Agreement with Portland General Gas Supply Docket No. UI 376.
- Portland General Electric 2017 Automated Update Tariff Docket No. UE 308
- PacifiCorp 2017 Transition Adjustment Mechanism Docket No. UE 307
- Portland General Electric 2017 Reauthorization of Decoupling Adjustment Docket No. UE 306
- Northwest Natural Gas Investigation of WARM Program Docket No. UM 1750.
- PacifiCorp Investigation into Multi-Jurisdictional Allocation Issues Docket No. UM 1050.
- Idaho Power Company 2015 Power Supply Expense True Up Docket No. UE 305
- Homer Electric Association 2015 Depreciation Study U-15-094
   Submitted prefiled testimony regarding the depreciation study.
- Chugach Electric Association 2015 Rate Case U-15-081
   Developed staff position regarding margin calculations.
- ENSTAR 2014 Rate Case U-14-111
   Submitted prefiled testimony regarding sales forecast.
- Alaska Pacific Environmental Services 2014 Rate Case U-14-114/115/116/117/118

*Attachment B: Lance Kaufman Curriculum Vitae*

Submitted prefiled testimony regarding cost allocations, cost of service, cost of capital, affiliated interests, and depreciation.

- Alaska Waste 2014 Rate Case U-14-104/105/106/107
  Submitted prefiled testimony regarding cost of service study, cost of capital, operating ratio, and affiliated interest real estate contracts.
- Fairbanks Natural Gas 2014 Rate Case  U-14-102
  Submitted prefiled testimony regarding cost of service study and forecasting models.
- Avista 2015 Rate Case U-14-104
  Submitted analysis supporting OPUC Staff settlement positions regarding Avista's sales and load forecast, decoupling mechanisms and interstate cost allocation methodology. Represented Staff in settlement conferences on November 21, November 26, and December 4, 2013.
- Portland General Electric 2015 Rate Case
  Submitted pre-filed opening testimony addressing PGE's sales forecast, printing and mailing budget forecast, mailing budget, marginal cost study, line extension policy and reactive demand charge. Represented OPUC Staff in settlement conferences on May 20, May 27, and June 12, 2014.
- Portland General Electric 2014 General Rate Case
  Submitted analysis supporting OPUC Staff settlement positions regarding PGE's sales and load forecast, revenue decoupling mechanism, and cost of service study. Represented OPUC Staff in settlement conferences on May 29, June 3, June 6, July 2, and July 9 of 2013. Submitted testimony in support of partial stipulation, pre-filed opening testimony addressing PGE's decoupling mechanism, and testimony in support of a second partial stipulation.
- PacifiCorp 2014 General Electric Rate Case
  Submitted analysis supporting OPUC Staff settlement positions regarding PacifiCorp's sales and load forecast and cost of service study. Represented Staff in settlement conferences on June 12 through June 14, 2013.

**UNCONTESTED PROCEEDINGS**
- Northwest Natural Gas Distribution Margin Normalization Docket No. UG 322.  2017 Staff memorandum.
- Northwest Natural Gas Affiliated Interest Agreement Docket No. UI 385.  2017 Staff memorandum.
- PacifiCorp Affiliated Interest Transaction with Marmon Utility Docket No. UI 382.  2017 Staff memorandum.
- PacifiCorp Transition to Advanced Metering Infrastructure Docket No. UE 322.  2017 Staff memorandum.
- PacifiCorp Klamath Dam Surcharge Docket No. UE 219. 2017 Staff memorandum.
- Portland General Electric Energy Efficiency Funding Adjustment Docket No. ADV 432.  2016 Staff memorandum.
- Portland General Electric Schedule 123 Decoupling Adjustment Docket No. ADV 410.  2016 Staff memorandum.
- PacifiCorp Renewable Energy Certificate Long Term Contract Agreements Docket No. UE 313.  2016 Staff memorandum.
- Northwest Natural Gas Distribution Margin Normalization Docket No. UG 312.  2016 Staff memorandum.
- Northwest Natural Gas WARM Program Tariff Update Docket No. ADV 341.  2016 Staff memorandum.

*Attachment B: Lance Kaufman Curriculum Vitae*

- Northwest Natural Gas Purchased Gas Cost Savings Credit Docket No. ADV 296.  2016 Staff memorandum.
- Northwest Natural Gas Weather Station Update ADV 211.
- Idaho Power Company Revised Rule H New Service Attachments and Distribution Line Installations or Alterations 2014 Provided Staff memorandum.
- PacifiCorp Modification to Rule 13 Line Extension and Related Tariffs. 2014 Provided Staff memorandum.
- Portland General Electric Revenue Decoupling Mechanism Evaluation. 2013 UM 1644. Provided OPUC Staff commentary on the independent evaluation of PGE's Decoupling Mechanisms.
- Portland General Electric Updates to Schedule 123 2013 Provided Staff memorandum.
- Northwest Natural Gas Revision to Partial Decoupling Tariff." 2013 Provided Staff memorandum.

## ATTACHMENT C: KLN AWARDS AND RECOGNITIONS

**ANNUAL AWARDS**

**Best Lawyers in America – Colorado**

2019 – Darold was named "Lawyer of the Year" in "Employment Law – Individuals" (additional selections pending)

2018 – David was named Lawyer of the Year in "First Amendment Law," all three partners were selected for recognition in "Civil Rights Law," David was selected for recognition in "Criminal Defense: General Practice," and Mari, David, and Darold were selected for recognition in "Employment Law – Individuals" and "Litigation - Labor and Employment."

2017- Mari was named "Lawyer of the Year" in "Employment Law – Individuals," David was named "Lawyer of the Year" in "Civil Rights Law," Darold was selected for recognition in "Civil Rights Law," David was selected for recognition in "Criminal Defense: General Practice," Mari, David, and Darold were selected for recognition in "Employment Law – Individuals" and "Litigation - Labor and Employment," and David was selected for recognition in "First Amendment Law" in both litigation and non-litigation,

2016 – Darold was named "Lawyer of the Year" in "Civil Rights Law," David was named "Lawyer of the Year" in "Litigation – First Amendment," David was selected for recognition in "Civil Rights Law," David was selected for recognition in "Criminal Defense: General Practice," Mari, David, and Darold were selected for recognition in "Employment Law – Individuals" and "Litigation - Labor and Employment," and David was selected for recognition in "First Amendment Law" in both litigation and non-litigation.

2015- David was named "Lawyer of the Year" in "Civil Rights Law," Darold was selected for recognition in "Civil Rights Law," David was selected for recognition in "Criminal Defense: Non-White Collar," Mari, David, and Darold were selected for recognition in "Employment Law – Individuals" and "Litigation - Labor and Employment," and David was selected for recognition in "First Amendment Law" in both litigation and non-litigation.

2014 – Darold was named "Lawyer of the Year" in "Litigation - Labor and Employment," Mari was named "Lawyer of the Year" in "Employment Law – Individuals," Darold and David were selected for recognition in "Civil Rights Law," David was selected for recognition in "Criminal Defense: Non-White Collar," Mari, David, and Darold were selected for recognition in "Employment Law – Individuals" and "Litigation - Labor and Employment," and David was selected for recognition in "First Amendment Law" in both litigation and non-litigation.

**Colorado Super Lawyers**

(Colorado Super Lawyers is an honor limited to five percent of the attorneys in Colorado.)
- Mari - "Top Rated Civil Rights Attorney" - selected to Super Lawyers - 2009-2018
- Darold - "Top Rated Civil Rights Attorney" - selected to Super Lawyers - 2006-2018
- David - "Top Rated Civil Rights Attorney" - selected to Super Lawyers - 2006-2018

- Michael - "Top Rated Civil Rights Attorney" – Selected to Super Lawyers Rising Stars - 2016-2018
- Darold Killmer and Mari Newman have each repeatedly been named as among the Top 100 Colorado Super Lawyers.
- Mari Newman has also repeatedly been designated one of the Top 50 Women Colorado Super Lawyers, and in 2011, she was named one of the Top 25 Women Colorado Super Lawyers.
- In 2010, Darold Killmer was designated as one of the Top 50 Lawyers in the State.

**5280's list of Denver's Top Lawyers from 2018**
- "Labor and Employment: Plaintiff":  Mari Newman, Darold Killmer
- "Civil Rights Litigation": David Lane, Darold Killmer, Mari Newman

**U.S. News & World Report**

- KLN is nationally ranked as "Tier 2" in Litigation – First Amendment."
- KLN is regionally ranked as "Tier 1" in "Civil Rights Law," "Criminal Defense: General Practice," "Employment Law – Individuals," "First Amendment Law," "Litigation - First Amendment," and "Litigation – Labor & Employment."

**Martindale-Hubbell Rating of AV-Preeminent®**

Darold Killmer. David Lane and Mari Newman have each consistently been awarded the highest possible rating in both legal ability and ethical standards by Martindale-Hubbell

**Supreme Court of Colorado Pro Bono Award**

Killmer, Lane & Newman, LLP has been consistently awarded for its outstanding contribution, service and commitment to pro bono achievement.

**OTHER AWARDS**

**2018 Dr. Martin Luther King Humanitarian Award, Greater Metro Denver Ministerial Alliance**

Won by all three partners

**Lawyers of the Year, Law Week Colorado**

Darold Killmer, David Lane and Mari Newman were recognized by Law Week Colorado as 2015 Lawyers of the Year.

**Shoes of Justice Award, AME Shorter Community**

In 2015, Darold Killmer, David Lane and Mari Newman were awarded the AME Shorter Community's Shoes of Justice Award, honoring individuals who have "walked the walk of Justice."

**Legal Aid Foundation of Colorado Access to Justice Recognition**

Killmer, Lane & Newman, LLP was recognized by the Legal Aid Foundation of Colorado in 2011 for its important contributions to improving access to justice in the State of Colorado.

**American Civil Liberties Union of Colorado Carle E. Whitehead Civil Rights and Liberties Award**

Darold Killmer, David Lane and Mari Newman were awarded the American Civil Liberties Union of Colorado's 2010 Carle E. Whitehead Award for "dedication to defending civil liberties and the rule of law."

**Colorado Trial Lawyers Association Access to Justice Award**

Darold Killmer, David Lane and Mari Newman were awarded the 2010 Colorado Trial Lawyers Association's Access to Justice Award, honoring "perseverance, courage and character shown over and over in cases of extraordinary circumstances."

**Southern Center for Human Rights Frederick Douglass Human Rights Award**

Each year the Southern Center for Human Rights honors those who have made outstanding contributions to the advancement of human rights. In 2007, Darold Killmer and Mari Newman were co-recipients of the Frederick Douglass Human Rights Award for representation of six Yemeni men detained at Guantanamo Bay, Cuba.

**Case of the Year Awards from the Colorado Trial Lawyers Association:**
- **2010 Case of the Year**
  David Lane, Darold Killmer, Althea S. Licht and Rebecca T. Wallace of Killmer, Lane & Newman, LLP;
  *Masters v. Gilmore, et al.*
  - Lawsuit brought on behalf of a wrongfully prosecuted and imprisoned man alleging violation of constitutional rights. Case resulted in settlement of $10,000,000 against the City of Fort Collins, Larimer County, and their officials

*Attachment C: KLN Awards and Recognitions*

- **2009 Case of the Year**
  Mari Newman, Rebecca T. Wallace, Althea S. Licht and Darold W. Killmer
  of Killmer, Lane & Newman, LLP
  *Amanda Hall v. Colorado Department of Corrections, et al.*
  - Amanda Hall awarded damages of $ 1,354,070.41 against Defendant, Leshawn Terrell, in his individual capacity. This amount comprises $ 354,070.41 in compensatory damages and $ 1,000,000.00 in punitive damages.
- **2003 Case of the Year**
  David Lane, Paula Greisen, David Miller and Mari Newman
  *Jesse F. Montez, et al. v. Roy Romer, Colo. Dept. of Corrections, et al.*
  - A class action lawsuit against the Colorado Department of Corrections for improper treatment of disabled inmates brought by Jesse Montez; 2003.


- **2017 Case of the Year Award Finalist**
  Mari Newman
  *Mason, et al. v. Fantasy Gentlemen's Club, et al.*, combatting wage exploitation of exotic dancers.
- **2014 Case of the Year Award Finalist**
  Mari Newman
  *Burns, et al. v. Hickenlooper, et al.*, striking down Colorado laws prohibiting marriage of same-sex couples
- **2010 Case of the Year Award Finalist**
  Mari Newman and Darold Killmer
  For *pro bono* representation of men imprisoned in Guantanamo Bay, Cuba
- **2008 Case of the Year Award Finalist**
  Mari Newman and Darold Killmer
  *Rice v. City of Denver, et al.*, for the death of a young woman who was denied medical care while in the Denver jail
- **2007 Case of the Year Award Finalist**
  Mari Newman and Darold Killmer
  *Bonner, et al. v. City of Aurora, et al.*, against the City of Aurora, Colorado for the police shooting of an unarmed black man


*Additional awards Mari has received:*

- 2018 "Harvey Milk Lifetime Leadership Award," from the Colorado State Legislature for work on behalf of LGBTQ rights
- 2016 "Raising The Bar" Award, Colorado Women's Bar Association Foundation
  - Celebrating "Women Lawyers Who Raise the Bar by Maintaining a Significant and Sustained Commitment to Pro Bono Services"
- 2015 Lawyer of the Year, Law Week Colorado
- 2015 Martin Luther King, Jr. Business Award
  - Celebrating "Content of Character"
- 2015 Attorney of the Year, Colorado GLBT Bar Association Foundation

*Attachment C: KLN Awards and Recognitions*

- 2013 Top Women Lawyers, Law Week Colorado
  - Recognized as one of 7 Top Women Lawyers in the state
- 2012 Entrepreneurial Woman of the Year, Denver Gay & Lesbian Chamber of Commerce
- 2012 & 2011 "Barrister's Best" Plaintiff's Employment Lawyer, Law Week Colorado
- 2011 Out Front Colorado Power List
  - Recognized as one of "45 LGBT leaders, volunteers and organizations that are making a difference."
- 2009 Denver Business Journal Forty Under Forty
  - Recognizing forty outstanding local professionals under age 40 for their business success and community contributions
- 2008 Richard Marden Davis Award
  - Recognizing a Denver lawyer under the age of 40 who combines excellence as a lawyer with creative civic, cultural, educational and charitable leadership
- 2008 Outstanding Young Trial Lawyer, Colorado Trial Lawyers Association
- 2008 Colorado Bar Foundation Fellow
  - Mari Newman has been named as a Fellow of the Colorado Bar Foundation (2008 - present), a designation bestowed upon no more than five percent of the lawyers in Colorado for "outstanding dedication to the welfare of the community, the traditions of the profession and the maintenance and advancement of the objectives of the Colorado Bar Association."
- 2007 Barrister of the Year, Colorado Legal Initiatives Project


*Additional awards Darold has received:*

- **College of Labor and Employment Lawyers Fellow** Darold Killmer was named a Fellow of the College of Labor and Employment Lawyers (2008 - present) in recognition of his devoted and distinguished career in the practice of labor and employment law.


*Additional awards David has received:*

- **Center For American and International Law Commitment Award** In 2009, David Lane was recognized for years of working with Texas capital defense lawyers to improve their trial skills.
- **Colorado Criminal Defense Bar** David Lane was the recipient of the Colorado Criminal Defense Bar's prestigious Jonathan Olom Award in 1995 for exceptional service and sacrifice in the representation of the criminally accused.
- **Colorado Developmental Disabilities Council Dan B. Davidson Award** David Lane was recognized in 2011 for his exceptional service to the Colorado disabilities community.
- **Newsed Community Development Civil Rights Award** David Lane was the recipient of the Newsed Community Development Award in 1997.

- David Lane is a featured lecturer in over 75 criminal defense seminars throughout the United States, including many national seminars devoted to various aspects of death penalty litigation and civil rights topics.

**SETTLEMENTS & JURY AWARDS FOR PLAINTIFFS REPRESENTED BY KLN:**
**\*not a complete list but a representative sample**

- A federal jury awarded Mark Smith **$760,000** to be paid by the town of Kremmling for excessive force by police, plus attorney fees. The town ultimately settled with Smith for **$960,000** and agreed to buy Smith's property in Kremmling.
  - *Smith v. Kremmling, et al.*
- Calvin Brown and 3 other Aurora Fire Department former/current employees received a **$480,000** settlement against the City of Aurora for racial discrimination; April 2018.
- The estate of Michael Marshall received **$5.3 million** in a settlement against the City of Denver; November 2017.
  - *Estate of Michael Marshall, et al. v. City and County of Denver, et al.*
- A Chicago school teacher settled with Fort Collins for **$150,000** after police wrongfully entered his home without consent and pepper sprayed him in the face; March 2017.
- After a jury verdict for Plaintiffs, Denver police settled with Daniel Martinez Jr. and his three sons for **$1.6 million** for civil rights violation; January 2017.
  - *Martinez v. Valdez*, No. 11-cv-00102-MSK-KLM, 2015 U.S. Dist. LEXIS 114602 (D. Colo. Aug. 27, 2015)
- Otero County paid Jennifer Hernandez **$150,000** to settle a federal lawsuit for sexual assault by an Otero County sheriff's deputy; January 2017.
- The family of Jennifer Lobato received a **$2.5 million** settlement from Jefferson County for violation of Lobato's civil rights; November 2016.
- A federal jury awarded **$400,000** to Philip White for Denver police's excessive use of force, and the court awarded an additional amount of approximately $470,000 in attorney fees and costs.
  - *White v. Chafin*, No. 1:13-cv-01761-CMA-MJW (D. Colo. Sept. 23, 2016)
- A federal jury awarded a record **$4.65 million** to the family of Marvin Booker against the City of Denver. The case settled for **$6 million** a month after trial.
  - *Estate of Marvin Booker, et al. v. City and County of Denver, et al.*, No. 11-cv-645-RBJ-KMT (D. Colo.)
- David Schutte settled for **$205,000** against Colorado Department of Corrections for wrongful discharge; August 2013.
- Robert Duran, a homeless man, won **$58,000** after a jury trial because he was beaten by a Denver jail deputy.
  - *Duran v. Koehler*, No. 10-cv-01569-REB-KMT (Aug. 25, 2014)
- Rickey Burrell received a **$100,000** settlement from the City of Aurora after police broke his wrist while he was having a seizure; February 2013.
- In March 2012, David Lane argued before the United States Supreme Court on behalf of Virgil Reichle, who was suing Secret Service agents for Mr. Reichle's alleged retaliatory arrest in violation of the First Amendment. The Court found for the Secret Service.

*Attachment C: KLN Awards and Recognitions*

- o *Reichle v. Howards*, 566 U.S. 658 (2012)
- Sandy Whitaker won **$2.2 million** from Aspen Land & Homes, LLC regarding employment and wage disputes; April 2010.
  - o *Whitaker v. Aspen Land & Homes, LLC, et al.*, No. 08-cv-009391 (Denver Dist. Ct.)
- Gerald Schlenker and the City of Arvada settled for **$330,000**; December 2009.
  - o *Schlenker v. City of Arvada, et al,,* No. 09-cv-011890
- Ed Thomas received a **$217,788.63** settlement against Furniture Row LLC for employment retaliation; November 2009.
  - o *Ed Thomas v. Furniture Row*, No. 07-cv-00824-CMA-MJW
- Amanda Hall was awarded damages of **$1.35 million** against Defendant, Leshawn Terrell, in his individual capacity. In a settlement agreement prior to trial, the Colorado Department of Corrections separately agreed to pay **$250,000** to Ms. Hall; 2009.
  - o *Hall v. Zavaras, et al.*, Civil Action No. 08-cv-00999-DME-MEH (D. Colo.)
- Whistleblower Sandra Simmons received a **$2.6 million** award after a Jefferson County jury trial against General Steel; July 2008.
- The family of Emily Rice, who died while in custody at the Denver City Jail, received a **$7 million** settlement from Denver; May 2008.
  - o *Estate of Emily Rice, et al. v. City and County of Denver, et al.*, No. 07-cv-01571-MSK-BNB (D. Colo.)
- The Bonner family received a **$610,000** settlement from the City of Aurora and significant non-monetary relief for the police shooting of Jamaal Bonner, who was unarmed; February 2007.
- The Lodge Casino at Blackhawk and two of its executives paid **$285,000** to settle claims brought by two former employees, Pat Bruno and Tom Gish, for discrimination and retaliation in violation of the ADA; May 2003.
- A class action lawsuit against the Colorado Department of Corrections for improper treatment of disabled inmates brought by Jesse Montez; 2003.
  - o *Montez v. Romer*, No. 92-N-870
- In 2002, A jury awarded **$1.2 million** to our client in a case of fraudulent inducement of employment and failure to pay wages.
  - o *Wunder v. Echo Bay Mines*, No. 99-CV-4108 (Arap. Dist. Ct.)
- Dr. Pam McCroskey was awarded **$1.7 million** in damages for unlawful retaliation; December 1999.
- In 2001, Dave Minshall won **$716,110** in a trial against McGraw Hill Broadcasting Co. (KMGH) for age discrimination.
- A Denver district court jury awarded **$3,785,000** to Rabah Khatib against the Executive Tower Hotel based on racial discrimination; August 1997.