IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  15-cv-01389-WYD-STV

JEANNE STROUP and
RUBEN LEE,

     Plaintiffs,

v.

UNITED AIRLINES, INC.,

     Defendant.

---

**ORDER ON PLAINTIFFS' MOTION FOR ATTORNEY'S FEES (ECF No. 168)**

---

I.    <u>INTRODUCTION</u>

    This matter is before me on Plaintiffs' Motion for Attorney's Fees (ECF No. 168),

filed June 8, 2018.   Plaintiffs' claims for discrimination under the Age Discrimination in

Employment Act ("ADEA") were tried to a jury on February 26 to March 2, 2018.  On

March 5, 2018, the jury returned a verdict in favor of Plaintiffs on all claims and awarded

them back pay.  The jury also found Defendant United's conduct to be willful.

    On October 17, 2018, following extensive briefing and an evidentiary hearing

held on August 14 and 16, 2018, I issued an Order on Damages.  ECF No. 220.  In that

Order, I affirmed the jury's back pay awards to Plaintiff Stroup ("Stroup") in the amount

of $214,479 and to Plaintiff Lee ("Lee") in the amount of $195,552.  I also awarded the

Plaintiffs liquidated damages equal to their back pay awards based on the jury's willful

finding.  I further awarded Stroup front pay in the amount of $314,711 and Lee front pay

in the amount of $206,862.  Finally, I awarded Stroup a tax penalty offset of $66,070

and Lee a tax penalty offset of $30,417.  ECF No. 220 at 40-41.

At the conclusion of the August 16, 2018 hearing on damages, I informed the parties that I would defer a ruling on the Plaintiffs' initial request for attorney's fees and ordered the Plaintiffs to supplement their pending motion for attorney's fees not later than thirty days after final briefing on post-trial motions.  ECF No. 211.  An Amended Final Judgment was entered on October 19, 2018.  ECF No. 222.  On November 13, 2018, the Defendant filed several post-trial motions.  On December 3, 2018, I granted an extension of time for the parties to submit both their responses and replies.  ECF No. 230.  Because the post-trial briefing deadlines have been extended, I have determined that in order to avoid unnecessary delay, I will rule on the initial attorney's fee motion, which is fully briefed and ripe for a decision.  I will entertain a supplemental attorney's fee request once it has been filed and is fully briefed.  Thus, having carefully reviewed Plaintiffs' initial request for attorney's fees and all associated filings, I grant Plaintiffs' Motion for Attorney's Fees in part and deny it in part, as more fully explained below.

## II.   ATTORNEY'S FEES

Plaintiffs seek an award of attorney's fees in the amount of $466,406, reflecting 1074.5 hours expended by six attorneys, one paralegal, and one legal assistant at rates ranging from $120 to $650 per hour.  ECF No. 168 at 7.

By reference to the Fair Labor Standards Act, the ADEA provides for an award of reasonable attorney's fee[s] and costs to be paid by the defendant.  *See* 29 U.S.C. §§ 626(b), 216(b).  A plaintiff may be considered a prevailing party for attorney's fees purposes if he "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433,

103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal citations omitted).  Here, the jury returned verdicts in favor of Plaintiffs on both ADEA claims and found that the Defendant's conduct was willful.  Thus, it is clear that Plaintiffs are the prevailing parties in this litigation and are entitled to recover reasonable attorney's fees.  I now turn to the issue of "what fee is reasonable."  *Id.* (internal quotation marks omitted).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Id.*  "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Id.*  In other words, "[t]o determine the reasonableness of a fee request, a court must begin by calculating the so-called lodestar amount of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a reasonable fee."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (citations and internal quotation marks omitted).  "The lodestar calculation is the product of the number of attorney hours reasonably expended and a reasonable hourly rate."  *Id.* (internal citations and quotation marks omitted).

A.    Plaintiffs' Degree of Success

While Defendant does not contest Plaintiffs' overwhelming success in this case, I believe it warrants discussion as it certainly provides support for the requested fee award.  In fact, the Supreme Court has held that the first and "'most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  *Farrar v. Hobby, Jr.*, 506 U.S. 103, 114, 113 S.Ct. 566, 574 (1992) (quoting *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941).

I presided over this case from the filing of the initial complaint in June, 2015 to

the present, and I am fully aware of the contentious nature of this litigation.  From numerous discovery disputes, multiple rounds of dispositive motions, a contentious jury trial, and various disputed post-trial issues, this case has been vigorously contested at every stage.  Ultimately, the jury found in favor of the Plaintiffs on every claim.  Plaintiffs were awarded several categories of damages including back pay, liquidated damages, and front pay, which total more than $1,300,000 combined.  I find that the jury's verdict in favor of the Plaintiffs on their age discrimination claims is both significant as to the amount of damages awarded and as to the public purpose served.  Two individual Plaintiffs sued their employer, a large corporation, for wrongful discrimination and ultimately prevailed on all claims.  *See Phelps v. Hamilton*, 120 F.3d 1126, 1132-33 (10th Cir. 1997).  Plaintiffs' complete and total success constitutes one basis for my ultimate decision to award the amount of attorney's fees reflected by this Order.  Guided by *Hensley* and noting my discretion to award a "fully compensatory fee" based on "excellent results," I now turn to whether the hours expended were reasonable. *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1940.

     B.   <u>Reasonableness of Hours Expended</u>

     In determining the reasonableness of the hours expended, a court considers several factors, including: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific tasks. *See Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983).

-4-

"The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.  The Tenth Circuit has noted that "[c]ounsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified School Dist. No. 233, Johnson County, KS*, 157 F.3d 1243, 1250 (10th Cir. 1998).  "A district court is justified in reducing the reasonable number of hours if the attorney's time records are sloppy and imprecise and fail to document adequately how he or she utilized large blocks of time." *Id.* (internal citations and quotation marks omitted); *see also Robinson*, 160 F.3d at 1281 ("a district court may discount requested attorney hours if the attorney fails to keep meticulous, contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks") (internal quotation marks omitted).

Once the court has adequate time records before it, "it must then ensure that the winning attorneys have exercised 'billing judgment.'" *Case*, 157 F.3d at 1250 (quoting *Ramos*, 713 F.2d at 553).  "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.*  "Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable." *Id.* (citing *Ramos* 713 F.2d at 553-54) (giving as an example time spent doing background research); *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939 (expecting counsel to exercise "billing judgment", "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or

otherwise unnecessary"). In other words, the district court should exclude from this initial fee calculation hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939 (internal quotation marks omitted).

After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable. "The *Ramos* court suggested that among the factors to be considered were (1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers." *Robinson*, 160 F.3d at 1281 (quoting *Ramos*, 761 F.2d at 554). Thus, I must "ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id.*

1.    Reasonable Number of Hours

Turning to my analysis, I first consider the reasonableness of the number of hours billed by Plaintiffs' attorneys and their support staff, which total 1074.5 hours. Lead counsel David Lane asserts that he spent a total number of 279.6 hours working on this case. Also, Mr. Lane's partners, Darold Killmer and Mari Newman, billed 10.9 hours and 8.8 hours respectively. Mr. Lane's associate attorneys, Michael Fairhurst and Liana Orshan, billed 441.6 hours and 135.4 hours respectively. Based on my review of the billing statement and the case filings along with my familiarity of the history of this case, I know that Mr. Fairhurst was heavily involved in this case until December 2017 when he became unavailable due to a personal matter. ECF No. 106. In January

2018, Liana Orshan entered her appearance and presumably assumed Mr. Fairhurst's responsibilities with respect to this case, which included assisting Mr. Lane at trial and with post-trial matters.  ECF No. 112.  The billing records also indicate that associate attorney Andrew McNulty billed 1.8 hours, Mr. Lane's paralegal billed 174.6 hours, and his legal assistant billed 21.8 hours.  ECF No. 168 at 7, Exs. 2-9.

Initially, the total amount of hours billed by Mr. Lane and his firm appear to be not only reasonable but lower than this Court would have expected given the highly contested nature of this case and its duration.  I also note that in his expert affidavit filed in support of Plaintiffs' requested fees, attorney John Holland echoed this sentiment stating:

> I expected that this application, at this point, to be significantly higher.  I believe this is actually due, as explained by Mr. Lane, to conservative billing practices and judgment.  When I saw the time sheets here I was surprised it was not substantially in excess of $600,000, and, it is clear to me from reviewing Mr. Lane's affidavit that much work that was billable was done here and not even claimed.

Holland Aff. ¶ 28, ECF No. 198-1.  Mr. Holland goes on to point out that clearly much of Mr. Lane's billable time was excluded based on billing judgment, and "[h]ad this case been tried by my [Mr. Holland's] firm there would have been two partners billing full time for trying this case along with significant associate and paralegal time."  Holland Aff. ¶¶ 29-31.  I agree and point out that while every case is distinct, I have presided over many employment discrimination cases where attorneys have billed a much greater amount of hours.

I also reject Defendant's argument that this case was a simple, "garden-variety" age discrimination case that should not have required excessive attorney hours.  ECF

No. 172 at 10.  The Plaintiffs were employed at United Airlines as flight attendants for decades, and the circumstances of their terminations were disputed at every turn.  The Plaintiffs claimed constructive discharge, which adds a layer of complexity to both the facts and the legal elements of the discrimination claim.  Due to this "additional set of legal and factual hurdles to [overcome]," John Holland stated that, "it has been my experience that constructive discharge cases are rather disfavored, regarded as particularly difficult to win and less desirable than immediate affirmative discriminatory or retaliatory terminations."  Holland Aff. ¶ 27.  As the presiding judge, I clearly find that this case was more involved and complex than Defendant now attempts to characterize.

Nonetheless, Defendant contends that the requested attorney hours should be reduced for excessive, vague, and unnecessary billing.  D.C.COLO.LCivR 54.3(b)(2) requires the Plaintiff to include "a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed."  *See* *Hensley*, 461 U.S. at 433 (stating that "the party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").  In support of its argument for a reduction in fees, Defendant engaged the services of Attorney David D. Powell, Jr. of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.  Mr. Powell prepared a report and concluded that the Plaintiffs' billing statement is excessive, vague and lacks the requisite minimal specificity in identifying the nature of services performed.  Powell Report, ECF No. 172-1.  Based on his analysis, Mr. Powell urges me to substantially reduce the number of hours billed by Plaintiffs.

Based on my review of the billing records and the parties' submissions, I find

some merit in Defendant's argument that the fee request should be reduced due to excessive, vague, and unnecessary billing entries.  Though not required to do so, I conducted a painstaking review of the billing statements and the Defendant's objections to virtually every billing entry contained therein.  "[T]rial courts need not, and indeed should not, become green eye-shade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205, 2216 (2011); *see DeGrado v. Jefferson Pilot Financial Ins. Co.*, No. 02-cv-01533-WYD-BNB, 2009 WL 1973501, at *10 (D. Colo. July 6, 2009), *see Am. Water Dev. Inc. v. City of Alamosa*, 874 P.2d 352, 387-88 (Colo. 1994) (recognizing that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application and endorsing percentage cuts as a practical means of trimming fat from a fee application).  "The term duplicative in the context of attorney's fees requests usually refers to situations where more than the necessary number of lawyers are present for a hearing or proceeding or when multiple lawyers do the same task.  The more lawyers representing a side of the litigation, the greater the likelihood will be for duplication of services."  *Robinson v. City of Edmond*, 160 F.3d at 1285 n.10 (internal citations and quotation marks omitted).

Turning first to the nearly 280 hours billed by Mr. Lane, I note that Mr. Lane stated in his affidavit that he exercised his professional billing judgment and excluded numerous hours in the fee petition such as: law clerk or intern hours; 40 hours of "intra-office conferences"; time spent "reviewing and writing over 1,000 emails"; and "dozens" of duplicative time entries."  Lane Aff. ¶ 17, ECF No. 183-1.  Nonetheless, Defendant challenges many of Mr. Lane's entries as "redundant," "excessive," "vague," and

"unnecessary."  ECF No. 172-6.  However, after carefully reviewing every entry on Mr.

Lane's time sheet, I disagree.  I find the descriptions of his activities to be sufficiently

detailed, demonstrating the amount of time that was allotted to specific tasks.  Also, as I

stated above, I believe Mr. Lane, a very experienced Plaintiff's attorney, was efficient

with his time and I decline to criticize the way in which the work was distributed or

delegated.  I particularly disagree with Defendant's complaint that Mr. Lane should have

spent considerably less time working on the Plaintiff's response to the Defendant's

motion for summary judgment.  Mr. Lane billed approximately 14 hours reviewing the

Defendant's motion, reviewing and editing the Plaintiffs' response, and reviewing the

Defendant's reply.  ECF No. 172-6; *see Hayes v. Skywest Airlines, Inc.*, No. 15-cv-

02015-REB-NYW (D. Colo. July 2, 2018) (ECF No. 220).  Similarly and using the same

analysis as outlined above, I find the 19.7 hours billed by Mr. Killmer and Ms. Newman

to be reasonable and not excessive.  These hours were billed for collaborative work

done on this case that would normally be billed to a paying client, and I find the billing

descriptions to have adequate detail.  Finally, I note that three prominent civil rights and

employment attorneys have submitted affidavits or declarations in support of the

reasonableness of Plaintiffs' claimed number of hours.  *See* John Holland Aff. at ECF

No. 198-1; Qusair Mohamedbhai Decl. at ECF No. 198-2; Lynn Feiger Decl. at ECF No.

198-3.

Next, I turn to the hours billed by the associate attorneys, Michael Fairhurst and

Liana Orshan.  After carefully reviewing the billing entries as described above, I find the

majority of both Fairhurst's and Orshan's hours to be supported by sufficiently detailed

descriptions.  However, I do find some unreasonable redundancies or duplications.

Both Mr. Fairhurst and Ms. Orshan bill hours spent attending the jury trial.  While having two associate attorneys work on a case of this duration is understandable, the duplication of these two attorneys attending the trial is a concern.  Also, as I recall, Mr. Fairhurst observed portions of the trial from the gallery but did not personally participate in the proceedings.  Mr. Fairhurst billed 12.6 hours to "attend/evaluate trial; conference w/David Lane re same."  ECF No. 168-5 at 11.  I find this type of entry to be both vague and duplicative.  Thus, I reduce the total number of hours billed by Mr. Fairhurst by 12.6 hours.  Additionally, Ms. Orshan billed 4.6 hours on January 19, 2018 to "review Complaint, motion to dismiss briefing and order, and summary judgment briefing and order."  ECF No. 168-6 at 1.  I agree with Defendant that "Ms. Orshan was billing to get up to speed to replace Mr. Fairhurst" and reduce Ms. Orshan's claimed hours by 4.6 as excessive or redundant charges.  ECF No. 172-6 at 29.  Similarly, I reduce the 1.8 hours billed by associate attorney Andrew McNulty for three meetings with Liana Orshan about "witness contact," "direct examinations," and "expectations for jury instruction conference" as redundant or duplicative.  ECF No. 168-7.  To my knowledge, Mr. McNulty did not attend or participate in the trial, and Michael Fairhurst, Liana Orshan and Mari Newman all billed multiple hours for work done on the jury instructions.

As for the balance of the hours billed by both Fairhurst and Orshan, I disagree with Defendant that all block billed entries should be excluded.  "So-called block billing consists of attorneys recording large blocks of time for tasks without separating the tasks into individual blocks or elaborating on the amount of time each task took.  Use of this rather imprecise practice may be strong evidence that a claimed amount of fees is excessive."  *Flying J Inc. v. Comdata Network, Inc.,* 322 Fed.Appx. 610, 617 (10th Cir.

2009) (citing *Robinson*, 160 F.3d at 1284).  However, given my broad discretion to determine whether the block billing was unreasonable, I conclude that any block billing on Plaintiffs' billing sheets did not prevent me from determining the reasonableness of the hours expended.  Except as noted above, I find the number of hours billed to be reasonable given the complex and contested nature of this case.  Further, "I decline Defendant's invitation to serve as a 'green-eyeshade accountant,' scouring the individual billing entries for evidence of waste or fat."  *Hayes*, No. 15-cv-02015-REB-NYW (D. Colo. July 2, 2018) (ECF No. 220 at 6); *see Fox*, 563 U.S. at 838, 131 S.Ct. at 2216.

Finally, I turn to the hours billed by paralegal Jamie Akard and legal assistant Helina Zewdu.  Ms. Akard billed a total of 174.6 hours.  ECF No. 168-8.  I carefully reviewed each disputed billing entry (ECF No. 172-6) for Ms. Akard, and considering the *Ramos* factors, I agree with Defendant that there should be a modest reduction for time spent on purely administrative tasks such as scanning and organizing documents, calendaring deadlines, copying, and printing because Plaintiffs have not proven that this time is normally billed to a client.  Thus, I reduce Ms. Akard's claimed hours by 2.8 hours.[1]  Ms. Zewdu billed a total of 21.8 hours for work that was largely devoted to the

---

[1] I agree with Defendant that the following billing entries should be excluded from Ms. Akard's total number of hours:  12/12/13 - Scan and electronically organize client documents (.4 hours); 1/06/14 - Scan and electronically organize additional client documents (.8 hours); 9/15/15 - Download Motion to Dismiss and calendar deadline to respond (.2 hours); 11/10/15 - Download Courtroom Minutes from Status Conference; calendar deadlines related to the same (.2 hours); 6/21/16 - Meet with Ms. Stroup and Mr. Lee regarding discovery responses; copy, scan and electronically organize additional documents received from clients (2.4 hours) (I will only reduce this amount by .4 hours to account for the time spent copying, scanning, and organizing documents); 10/10/16 - Review file and print documents to be used as potential exhibits (.8 hours).

preparation of witnesses.  ECF No. 168-9.  While Defendant complains that some of Ms. Zewdu's billing entries were for tasks that should be excluded as "clerical/overhead," "vague," or "redundant," I disagree.  ECF No. 172-2.  Ms. Zewdu's billing entries show that she communicated with potential witnesses, drafted witness statements, and conducted research on other potential witnesses.  After examining the specific tasks performed by Ms. Zewdu, I find they are properly chargeable and the hours expended to be reasonable.

2.     Reasonable Hourly Rate

The Tenth Circuit indicates that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'"  *Burch v. La Petite Academy, Inc.*, 10 Fed. Appx. 753, 755 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1255).  The local market rate is usually the state or city in which counsel practices.  *Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1203 (10th Cir. 1999) (looking at "the prevailing market rate in the relevant community"); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in the area in which the litigation occurs).  The court is also entitled to consider the quality of counsel's performance in setting the fee.  *Ellis*, 163 F.3d at 1203 (citing *Ramos*, 713 F.2d at 555).

Here, the relevant community is Denver, Colorado.  Plaintiffs' counsel requests the following rates: $650 per hour for Mr. Lane, who has approximately 38 years of experience; and Mr. Killmer, who has approximately 32 years of experience; $600 per hour for Ms. Newman, who has approximately 20 years of experience; $425 per hour for Mr. Fairhurst, who has approximately 5 years of experience at KLN; $375 per hour for Ms. Orshan, who has approximately 2 years of experience at KLN; $175 per hour for

-13-

Ms. Akard, who has approximately 15 years of experience as a paralegal at KLN; and $120 per hour for Ms. Zewdu, who has approximately 5 years of experience as a legal assistant.[2]  In support of this request, Plaintiffs' counsel submitted affidavits and declarations by civil rights and employment attorneys in the Denver market who aver that the claimed rates are in line with the billing standards in this legal market[3] along with a report by Bardwell Consulting Ltd.  ECF No. 198, Ex. 1-7.

David Lane, Darold Killmer, and Mari Newman

In his affidavit, Mr. Lane states that he has practiced law for approximately 38 years and has been litigating civil rights cases in the Denver area since 1996.  Lane Aff., ECF No. 183-1.  In 2002, Mr. Lane and Mr. Killmer formed the law firm known as Killmer, Lane & Newman ("KLN"), and in 2003, Mari Newman became a partner.  KLN has been selected by U.S. News and World Report as one of the "Best Law Firms," and Killmer, Lane and Newman have been selected by "Peer Recognition as among Denver's Best Lawyers."  *Id.*  Both KLN and the three partners have received "repeated recognition as leaders in civil rights litigation."  *Id.*

According to the submissions by attorneys Holland, Mohamedbhai, and Feiger, Mr. Lane has "exceptional trial skills," "a remarkable reputation in [the Denver] community," "extraordinary skills and abilities," and is a "clear[] leader in [his] field." Holland Aff., ECF No. 198-1.  "While the rate of $650 is in the upper range of the market, Mr. Lane is also one of the most skilled and experienced attorneys in Colorado,"

---

[2] Since I excluded the hours billed by Andrew McNulty, I do not address his hourly rate.

[3] These attorneys have previously been identified in this Order as John Holland, Qusair Mohamedbhai, and Lynn Feiger.

-14-

and this rate is "within the range of fees comparably-skilled and experienced attorneys charge in the Denver, Colorado market."  Mohamedbhai Decl., ECF No. 198-2.  "Mr. Lane [and his firm] are among the most well-regarded and most-sought after attorneys in Colorado in the areas of plaintiffs' civil rights and employment, and indeed civil litigation more generally.  *Id.*  "David Lane, Darold Killmer, and Mari Newman are trailblazers in civil rights law and employment discrimination litigation in Colorado, and they have decades of experience specializing in this complex and substantially changing field of practice."  Feiger Decl., ECF No. 198-3.  The requested rates are warranted here "given [Lane, Killmer, and Newman's] experience, knowledge, and their impressive record of success in advancing the rights of people whose civil rights have been violated."  *Id.*  I note that Mr. Holland charges $650 per hour, Mr. Mohamedbhai charges $500 per hour[4], and Ms. Feiger charges $600 per hour.  *See* Holland Aff. ¶ 14, Mohamedbhai Decl. ¶ 20, and Feiger Decl. ¶ 11.

In response, Defendant's expert David Powell, who charges $455 per hour, concludes that reasonable rates for Mr. Lane and Mr. Killmer should be between $300-$455 per hour and reasonable rates for Ms. Newman should be between $275-$325 per hour.  Powell Report at 4, ECF No. 172-1.  Relying on the Colorado Bar Association's 2017 Economic Survey ("CBA Survey"), Mr. Powell believes that KLN's requested rates do not reflect the prevailing Denver market rates for work performed by counsel who focus on labor and employment matters.  *Id.* at 3.  The CBA Survey was emailed to

---

[4] Mr. Mohamedbhai notes in support of Mr. Lane's requested hourly rate of $650 that he has only practiced for approximately 15 years and that his $500 hourly rate was recently approved by Magistrate Judge Gallagher in *McFadden v. Town of Meeker, Colorado*, No. 16-cv-2304 (May 15, 2018).  Mohamedbhai Decl. at 3-5.

approximately 25,000 individuals identified by the CBA as licensed attorneys in

Colorado, and it's purpose was to "collect updated information on the economics of law

practice."  CBA Survey at 1, ECF No. 172-4.  Approximately 1,600 responses were

submitted—a 6.7% response rate.[5]  *Id.*  at 2.  The CBA Survey found that in 2016, the

most common hourly rate for all attorneys was $254, while the average hourly rate for

employment attorneys was $309.  *Id.* at 34, 36.

      After carefully reviewing the CBA Survey, I am dubious as to its validity and

overall value to the case at hand.  Referring expressly to the CBA Survey, Judge

Blackburn stated in a recent attorney fee order, "I am not persuaded that this

amalgamation of the hourly rates of attorneys across all levels of experience and all

areas of practice is an appropriate benchmark for this case."  *Hayes*, No. 15-cv-02015-

REB-NYW (D. Colo. July 2, 2018) (ECF No. 220 at 3-4).  Moreover, the report

submitted by Bardwell Consulting, Ltd. ("Bardwell Report") on behalf of Plaintiffs casts

substantial doubt on the reliability of the CBA Survey.  For example, approximately 94%

of attorneys who were sent a survey did not respond, and particularly relevant to this

case, only ten employment attorneys responded to the survey's questions while zero

civil rights attorneys responded.  Bardwell Report, ECF No. 198-4.  In his Report, Dr.

Bardwell noted that he "surveyed 25 top rated Employment Attorneys and found an

average rate of $494 per hour."  *Id.* at 19.  I agree with the Bardwell Report that the

CBA Survey "does not have an attorney group that has comparable skills, expertise,

---

     [5] As an incentive to respond, those attorneys who responded to the CBA Survey were
entered into a "sweepstakes for a chance to win one of five $100 Visa gift cards."  ECF No. 172-
4 at 1.

and or recognition as Plaintiffs' attorneys," thus, I find it to have limited value as applied to this case.  *Id.* at 21.

Mr. Powell also opines that Plaintiffs' requested rates are unreasonable because similar rates have not been consistently approved by judges in this Court.  Thus, I now turn to previous decisions by other courts to show what "the market commands for civil rights or analogous litigation."  *Case*, 157 F.3d at 1255; *Hayes*, No. 15-cv-02015-REB-NYW (D. Colo. July 2, 2018) (approving rates of $450 per hour for lead civil rights counsel with 15 years of experience, $400 per hour for associate counsel with 11 years of experience, and $150 per hour for paralegal); *Kerner v. City and County of Denver*, No. 11-cv-00256-MSK-KMT (D. Colo. May 26, 2017) (approving rates of $500 per hour for lead counsel in a Title VII case, $375 per hour for associate counsel, and $150 per hour for paralegal); *White v. Chafin*, No. 13-cv-01761-CMA-MJW, 2016 WL 9735066,   *4 (D. Colo. Sept. 23, 2016) (approving rates of $500 per hour for lead counsel, $275-$450 per hour for co-counsel, and $150 per hour for paralegal); *Martinez v. Valdez*, 125 F. Supp. 3d 1190 (D. Colo. 2015) (approving rates of $300-$500 per hour for counsel and $150 per hour for paralegal); *Barnett v. Bd. of County Commissioners of Montrose*, No. 14-cv-01765-JAP-GPG, 2015 WL 13614118, *5 (D. Colo. Dec. 14, 2015) (approving rates of $400 per hour for lead counsel with 9 years of experience, $300 per hour for two attorneys with 7 years experience each, and $75 per hour for a paralegal after surveying recent District of Colorado cases that address contested hourly rates); *Ebonie S. v. Pueblo School District 60*, No. 09-cv-0858-WJM-MEH (D. Colo. March 22, 2016) (approving rates of $260-$475 per hour for attorneys with varying years of experience and $190 per hour for paralegal); *Waller v. Lovingier*, No. 14-cv-02109-WYD-NYW (D.

Colo. Dec. 5, 2017) (approving rates of $450 per hour for lead counsel and $150 per hour for paralegal).

Given my careful consideration of the parties' contradictory submissions regarding rates for civil rights attorneys of similar skill and experience in this locality along with the controlling law, previous court decisions, and other reliable market rate evidence, I find that KLN's requested rates are slightly excessive.  I have not located any other civil rights case in this district where an attorney was awarded an hourly rate of $650.  However, because I do consider the years of experience, skill level, and reputation of Mr. Lane, Mr. Killmer, and Ms. Newman along with the other market rate evidence, I do believe a rate at the higher end of the Denver market is appropriate, especially considering the level of success achieved in this particular case.  Thus, I reduce Mr. Lane's and Mr. Killmer's requested billing rate from $650 per hour to $590 per hour.  Using the same analysis, I reduce Ms. Newman's requested billing rate of $600 per hour to $540 per hour.

<u>Michael Fairhurst, Liana Orshan, Jamie Akard, and Helina Zewdu</u>

Similarly, and based on the same analysis as set forth above, I find the requested rates for associate attorneys Mr. Fairhurst ($425 per hour) and Ms. Orshan ($375 per hour) to be excessive given their level of experience and the relevant market rate evidence.  I also note that Plaintiffs' own proffered evidence supports a lower associate attorney rate.  *See* Feiger Decl. ¶ 11 (stating that the billing rate for current associates is between $250 and $350 per hour and the paralegal billing rate is $175 per hour).  Accordingly, I reduce Mr. Fairhurst's billing rate to $375 per hour and Ms. Orshan's billing rate to $350 per hour.  Applying the same analysis, I find the requested

-18-

paralegal rate of $175 per hour and legal assistant rate of $120 per hour to be reasonable and in line with the prevailing rates in the Denver legal market.

After accounting for the reduction of hours and rates detailed above, the lodestar calculation is as follows:

| Employee | Hourly Rate | Hours Billed | Total Fee |
|----------|-------------|--------------|-----------|
| David A. Lane | $590 | 279.6 | $164,964 |
| Darold W. Killmer | $590 | 10.9 | $6431 |
| Mari Newman | $540 | 8.8 | $4752 |
| Michael Fairhurst | $375 | 429 | $160,875 |
| Liana Orshan | $350 | 130.8 | $45,780 |
| Jamie Akard | $175 | 171.8 | $30,065 |
| Helina Zewdu | $120 | 21.8 | $2616 |
| **TOTAL** | | 1052.7 | **$415,483** |

III.   COSTS

"Plaintiffs also seek reimbursement for expert witness fees, **not** as part of an attorney fee but rather under this Court's equitable powers to award costs when the expert's witness testimony was crucial and indispensable to the case."  ECF No. 198 at 25 (emphasis in original).  Plaintiffs also concede that "no costs should be awarded for fees incurred by Dr. Kaempfer in preparing the supplemental report on which testimony at trial was precluded ... and will submit to the Court a revised invoice from Dr. Kaempfer showing the cost of those fees."  *Id.*  Accordingly, I deny without prejudice Plaintiffs' pending request and order Plaintiffs to submit a revised motion for reimbursement for any expert witness fees as part of its supplemental motion for attorney fees.

IV.    <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Plaintiffs' Motion for Attorney's Fees (ECF No. 168), filed June 8, 2018, is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** to the extent that Plaintiffs are awarded attorney's fees in the amount of **$415,483** as set forth in this order.  It is

FURTHER ORDERED that the Plaintiffs may file a supplemental motion for attorney's fees thirty (30) days after final briefing on the post-trial motions.  It is

FURTHER ORDERED that the motion is **DENIED WITHOUT PREJUDICE** as to Plaintiff's request for reimbursement of expert witness fees.  It is

FURTHER ORDERED that the Amended Final Judgment (ECF No. 222) shall be amended to reflect the award of attorney's fees.  It is

FURTHER ORDERED that the Plaintiffs' Motion to Compel Written Discovery from Defendant United Airlines, Inc. (ECF No. 202) is **DENIED AS MOOT.**  After carefully reviewing all of the materials submitted in connection with the request for attorney's fees and the controlling law, I find that the discovery requested in the motion is unnecessary and would not materially assist me in analyzing the issues set forth in this Order.

Dated:  December 5, 2018

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge

-20-